**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

CORY A. COLVIN,                 CASE NO. 2:06-cv-681

                                JUDGE HOLSCHUH

       Petitioner,               MAGISTRATE JUDGE ABEL

v.

MICHAEL SHEETS,

       Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to

28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ,

and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS**

that this action be **DISMISSED.**

### I. FACTS AND PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this

case as follows:

> Defendant-appellant, Cory A. Colvin, was indicted by the Franklin
> County Grand Jury on one count of attempted murder, in violation of
> R.C. 2923.02, one count of felonious assault, in violation of R.C.
> 2903.11, and two counts of having a weapon while under disability,
> in violation of R.C. 2923.13. The attempted murder and felonious
> assault counts included firearm and drive-by shooting specifications.
> All of the counts were related to the non-fatal shooting of Mecca
> Givens ("Givens") on October 4, 2001. Appellant was indicted along
> with a co-defendant, Kambon Tiafa Kali ("Kali").
>
> The attempted murder and felonious assault counts have been tried to
> a jury three times. Appellant waived a jury trial relative to the count
> of having a weapon while under disability.

During the first trial, Kali accepted a plea bargain after hearing the testimony of Givens. Kali then testified against appellant as required pursuant to the terms of his plea agreement. Because the jury was unable to reach a unanimous verdict, the trial court declared a mistrial. Near the end of the second trial, the trial court declared a mistrial after defense counsel made an inappropriate comment to the jury during closing arguments indicating that the prosecutor was unable to convince the first jury of appellant's guilt. A third jury found appellant guilty of the principal counts and specifications, and the trial judge found appellant guilty of the weapons count.

Plaintiff-appellee, State of Ohio, elected to have appellant sentenced on the attempted murder count, and the trial court imposed an aggregate 14-year prison term, consisting of six years for the attempted murder, consecutive three and five-year prison terms for the firearm and drive-by shooting specifications, and a concurrent one-year prison term for the count of having a weapon while under disability.

***

On October 4, 2001, Givens and other family members were at the home of Givens' sister, Demetria. (Tr. Vol.II, 38-39.) Many people were at Demetria's house following the recent death of Mike Rispress, who was allegedly shot by Demetria's boyfriend. Kali took the death of Rispress very hard and indicated that he wanted to do something to the people who had killed his friend. After spending a considerable amount of time with appellant drinking, the two men drove around in Kali's white Lincoln looking for the people responsible for Rispress' death.

Later, Givens took her nephew, Marcus Stoumile, to her apartment. Givens' cousin, Earnest Felder, also went with them.

Felder and Givens were sitting on the front steps of Givens' apartment when they saw Kali and appellant drive down the alley near Givens' home. The windows of the car were down, and both Felder and Givens were able to see the occupants, whom they both knew from the neighborhood.

At approximately 8 p.m., Givens and Stoumile were leaving her apartment. Givens saw Kali's car coming down the street with the passenger side toward her apartment. Both Givens and Stoumile saw

2

appellant inside the car in the passenger seat. Givens testified at trial that she called out to appellant, "what's up [?]" (Tr. Vol. II, at 145.) Appellant responded, "[w]hat you mean what's up, I'll show you what's up, bitch." *Id.* Thereafter, Givens testified that appellant raised a gun and began shooting. Givens was shot above her left eye, and as a result lost sight in her left eye and has six metal plates in her head. The bullet is still lodged in her skull. As such, the police were not able to identify the gun with which Givens was shot.

Felder testified that he left Givens' home because he feared for his safety. However, when he heard gunshots, Felder drove back to Givens' apartment. Felder saw Givens lying on the ground with a bullet wound in her forehead.

Columbus Police Officer, Howard Pettengill, was the first officer to respond to the scene. He observed Givens lying face-up with a bullet wound between her eyes. Givens was conscious, and when Officer Pettengill asked her if she knew who had shot her, Givens responded, "Cory and Taifa [Kali]." (Tr. Vol. II, at 9.) Officer Mark Johnson arrived at the scene later, and Givens also gave him Kali's name. Based upon the description of the car, the police located Kali's car behind 408 Stoddard Avenue. The hood of the vehicle was still hot. Felder later identified the car as belonging to Kali.

Police collected spent shell casings from a .40-millimeter and a .9-millimeter gun from the scene. However, because the bullet is still lodged in Givens' head, there is no evidence as to which caliber gun injured Givens. The police were not able to recover any of appellant's fingerprints from the inside of the vehicle.

Kali testified that he had known appellant since high school and that he knew both Givens and Felder from the neighborhood. According to Kali's testimony, he understood that some "guys" from Detroit were responsible for the death of Mike Rispress and that one of them was living with Givens. A friend, Dontay Daniels ("Daniels"), agreed to show Kali where Givens lived, and the two drove past her apartment in Kali's car. According to Kali's testimony, appellant was following behind them in his Ford Taurus. Later that day, Daniels was beaten up. Kali and appellant ended up drinking at a bar until Kali went to his friend "Tomica's" house. Thereafter, Kali and appellant got back together again and with guns (appellant had a .9 millimeter and Kali had a .40 millimeter), the two drove by Givens' apartment again. Kali testified that he saw a guy outside Givens' apartment as

3

they drove by. Kali heard appellant yell, "bitch," and then heard two
shots. As he turned, Kali saw appellant leaning out of the window
with the gun in his right hand. Kali testified that he stopped his car,
stood up through the sunroof and fired his gun.

Two witnesses testified for the defense. Both of them testified that
appellant was with them at a local bar called the "Green Room" all
evening.

Exhibit E to Return of Writ. Represented by new counsel, petitioner filed a timely appeal. He raised

the following assignments of error:

Appellant timely filed a notice of appeal, wherein he asserts the following six assignments of
error:

Assignment of Error No. 1:

The trial court's *sua sponte* declaration of a mistrial and denial of
Defendant-Appellant's subsequent motion to dismiss on double
jeopardy grounds violated his rights under U.S. Const. Amend. V and
XIV and Ohio Const. art. 1 § 10 to not be twice put in jeopardy for
the same offense. Defense counsel's closing remarks to the second jury
to the effect that the prosecution was unable to convince the first jury
of her client's guilt did not create a manifest necessity to abort the
second trial.

Assignment of Error No. 2:

Defendant-Appellant's convictions for attempted murder with
specifications (as well as the guilty verdict for felonious assault with
specifications that was merged with the attempted murder conviction)
and having a weapon under disability are not supported by evidence
sufficient to satisfy the requirements of due process under U.S. Const.
amend. V and XIV; or, alternatively, are against the manifest weight
of the evidence.

Assignment of Error No. 3:

The trial court's submission of an incomplete set of written

4

instructions to the jury and its subsequent failure to follow the proper procedures for responding to the jury's request for additional instructions contravened Crim.R. 22, Crim. R. 43(A) and R .C. 2945.10(G), violated Defendant-Appellant's right to be present during jury re-instruction, his right to counsel, and his right to due process and a fundamentally fair jury trial under U.S. Const. amend. V, VI and XIV and Ohio Const. art. 1, §§ 5, 10 and 16, and constituted structural error or, alternatively, prejudicial error.

Assignment of Error No. 4:

The following erroneous evidentiary rulings and overreaching by the prosecutors, separately and/or in combination, unfairly and prejudicially tipped the credibility balance squarely in favor of the State and violated Defendant-Appellant's right of confrontation and cross-examination and right to due process and a fundamentally jury fair trial under U.S. Const. amend. V, VI and XIV and Ohio Const. Art. 1 §§ 10 and 16:(a) the admission of unreliable hearsay testimony that was directed to establishing a motive for the State's theory of why Defendant-Appellant would shoot the victim, (b) the exclusion of extrinsic evidence of the cooperating codefendant's bias and motive to lie, and (c) the prosecutors' improper use of the enforcement clause of the codefendant's unredacted cooperation agreement to bolster his credibility.

Assignment of Error No. 5:

The trial court's decision to sentence Defendant-Appellant to a six year prison term for attempted murder was contrary to law and violated his right to presentment to a grand jury, his right to trial by jury, and his right to due process under U.S. Const. Amend. V, VI and XIV and Ohio Const. Art. 1, §§ 5, 10 and 16 due to the following procedural defects: (a) the omission of an allegation in the indictment as to any of the additional facts required by R.C. 2929.14(B) for the imposition of a prison term in excess of the shortest prison term of three years for a first degree felony and (b) the lack of a jury finding as to the existence of those facts under the beyond a reasonable doubt standard.

Assignment of Error No. 6:

Defendant-appellant was denied his right to the effective assistance of counsel guaranteed to him under U.S. Const. amend. VI and XIV as

5

> a result of defense counsel's failure (a) to object to certain errors that are the subject of Assignments of Error Nos. 3, 4 and 5 and/or to take other corrective action to protect their client's rights and (b) to re-call a witness who had given testimony favorable to the defense at the second trial.

*Id.* On March 29, 2005, the appellate court overruled petitioner's second, third, fourth, fifth, and sixth assignments of error, but overruled in part and sustained in part petitioner's first assignment of error as follows:

> This court found that double jeopardy barred the trial court from finding, in the third trial, that appellant was guilty of carrying a weapon while under disability. However, there is no need to remand this matter, as appellant's sentence would not change. Appellant was sentenced relative to count two, attempted murder, to a six-year determinative sentence. The trial court sentenced appellant with regard to count three, having a weapon while under disability, to an eleven-month determinative sentence to be served concurrent with the six-year sentence in count two. As such, the only requirement is that the matter be remanded for a revised judgment entry omitting the finding of guilt relative to having a weapon while under disability, yet with the sentence remaining the same. In all other respects, the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Id.* On April 29, 2005, the trial court revised petitioner's judgment entry of conviction, in compliance with the remand from the Court of Appeals.  Exhibit F to Return of Writ.  Still represented by counsel, petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court. He raised the following propositions of law:

> 1.  The declaration of a mistrial due to remarks made by defense counsel regarding the inability of the State to convince a jury at a prior trial on the same indictment violates the defendant's valued right under the double jeopardy clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution to have his case decided by the particular

6

jury impaneled to hear his case when the record shows that the prosecutor's objection to the remarks was untimely, the prosecutor did not ask for a mistrial, the trial court did not give serious consideration to a curative instruction and did not take a recess to allow counsel time to submit a mutually acceptable instruction, the stated reason for the mistrial was speculation by the trial court that the jury might not be able to agree on a verdict if allowed to deliberate, and the trial court's comments taken as a whole indicate that it acted out of frustration with and a desire to punish defense counsel for the remarks rather than a manifest necessity.

2.   The mere identification of a possible non-hearsay use is an insufficient justification for admitting hearsay testimony against the defendant over his objection if the jury is likely to consider the testimony as evidence of his motive to commit the charged crime.  In the absence of a recognized hearsay exception, the admission of the hearsay violates the defendant's rights under the confrontation and due process clauses of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

3.  The erroneous exclusion of defense testimony of a key prosecution witness's bias and motive to lie violates the defendant's rights under confrontation and due process clauses of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and requires reversal if there is a reasonable possibility that the trial court's exclusionary ruling contributed to the defendant's conviction.

4.   A prosecutor's unfair efforts to bolster the credibility of a cooperating codefendant by indicating to the jury that the State will take corrective action against the codefendant in the event that the witness does not testify truthfully violates the defendant's rights to due process and a fundamentally fair jury trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

5.  Under the cumulative error doctrine, a conviction will be reversed and a new trial ordered when the aggregate effect of trial errors involving the erroneous admission of damaging hearsay testimony, the erroneous exclusion of defense evidence of a key prosecution witness's bias and motive to lie, and the improper bolstering of the credibility of that witness deprives the defendant of his right to due process and a fundamentally fair jury trial under the Fifth, Sixth and

7

Fourteenth Amendments to the United States Constitution even though each of the errors, standing alone, might not otherwise justify a reversal.

6. A court of appeals deprives the defendant of his right to due process and right to the assistance of counsel under the fifth, Sixth and Fourteenth Amendments to the United States Constitution when it grants the State's motion to supplement the record on appeal with a "corrected" record that was issued by the trial court in an ex parte proceeding without adequate notice to defendant's counsel and without an opportunity to be heard.

7. A reversal of the defendant's convictions and a remand for a new trial is required when the record on appeal demonstrates that the trial court supplied the jury with a materially incomplete written charge and thereafter failed to follow the proper procedures for responding to the jury's request for additional instructions, in violation of his right to counsel, his right to be present during all critical stages of the proceedings, and his right to due process and a fundamentally fair jury trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 5, 10 and 16 of the Ohio Constitution.

8. A defendant's convictions for felony offenses and specifications related to a "drive-by" shooting are not supported by evidence sufficient to satisfy the requirements of due process under the Fifth and Fourteenth Amendments of the United States Constitution where the record on appeal discloses the following: (a) the defendant was prosecuted under a single offender theory, (b) immediately following the shooting, the victim identified the codefendant as the actual shooter, (c) the codefendant had ample motive to lie and to falsely implicate the defendant as the shooter, (d) hospital records showed the victim and the codefendant give factually irreconcilable accounts of the shooting, (f) according to a bystander, the orientation of the drive-by vehicle was such that only the codefendant could have been the shooter, and (g) there was no physical evidence linking the defendant to the shooting.

9. The imposition of a sentence consisting of a prison term exceeding the shortest prison term specified in R.C. 2929.14(A) for the felony offense of conviction violates the defendant's right to a jury trial and

right to due process under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and the Defendant's right to grand jury presentment under Article I, Section 10 of the Ohio Constitution when the additional findings required by R.C. 2929.14(B) for the imposition of a non-minimum prison term for first time imprisonment were not alleged in the indictment and were not decided by a jury under the beyond a reasonable doubt standard.

10. Defense counsel's failure to lodge timely objections or to take other corrective action to protect his client's trial and sentencing rights and his failure to recall a witness who had given testimony favorable to the defense in an earlier trial deprives the defendant of his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution when there is a reasonable probability that, but for the defense counsel's unprofessional errors, the outcome of the trial and/or sentencing would have been different.

Exhibit G to Return of Writ. On August 10, 2005, the Ohio Supreme Court accepted the appeal on petitioner's ninth proposition of law and stayed the action pending decisions in *State v. Quinones* and *State v. Foster*. Exhibit I to Return of Writ. On May 3, 2006, the Ohio Supreme Court remanded the case to the trial court for re-sentencing under *State v. Foster*, 109 Ohio St.3d 1 (2006). Exhibit J to Return of Writ. On July 11, 2006, the trial court re-sentenced petitioner to the same sentence it had previously imposed. Exhibit K to Return of Writ.

On August 9, 2006, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1. Petitioner's rights under the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to the United States Constitution were violated when the trial court declared a mistrial without manifest necessity and over defense objection during his second trial and compelled him to be tried for a third time on the same charges.

9

2. Petitioner's convictions for attempted murder and felonious assault with specifications are not supported by evidence sufficient to satisfy the requirements of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

3. The submission of a materially incomplete set of written instructions to the jury and the exclusion of petitioner and his counsel from the proceedings involving the re-instruction of the jury violated petitioner's rights to due process, right to a jury trial, and right to counsel under the fifth, Sixth and Fourteenth Amendments.

4. The supplementation of the record on appeal with a "corrected" record that was issued by the trial court in an ex parte proceeding without adequate notice and without an opportunity to be heard violated petitioner's rights to due process and to the assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments.

5. The erroneous admission of unreliable hearsay testimony directed to establishing the State's theory of a motive for why petitioner would shoot the victim violated petitioner's rights under the Confrontation and Due Process Clauses of the Fifth, Sixth and Fourteenth Amendments.

6. The erroneous exclusion of testimony of a defense witness regarding the cooperating co-defendant's bias and motive to lie violated petitioner's rights under the Confrontation and Due Process Clauses of the Fifth, Sixth and Fourteenth Amendments.

7. The prosecutor's unfair efforts to bolster the credibility of the cooperating co-defendant by suggesting to the jury that the State would take corrective action against the witness pursuant to an enforcement clause of a cooperation agreement in the event that the witness did not testify truthfully violated the petitioner's right to due process and a fundamentally fair jury trial under the Fifth, Sixth, and Fourteenth Amendments.

8. Petitioner was deprived of his right to the effective assistance of trial counsel as guaranteed to him under the Sixth and Fourteenth Amendments.

It is the position of the respondent that claim seven is waived, and that the remainder of petitioner's claims are without merit.

## II.  CLAIM ONE

In his first claim for relief, petitioner asserts that his prosecution in a third jury trial violated the Double Jeopardy Clause because the trial court declared a mistrial during his second trial without manifest necessity and over the objection of defense counsel.  In its March 29, 2005 decision, the Ohio Tenth District Court of Appeals denied this claim as follows:

> In his first assignment of error, appellant asserts that the trial court improperly granted a mistrial at the end of the second trial. Appellant contends that the remarks made by defense counsel during closing arguments did not create a manifest necessity for ordering a mistrial.
>
> It is undisputed that jeopardy had attached in this case because the second jury had already been impaneled and sworn and all of the evidence had been presented.  *Crist v. Bretz* (1977), 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24. The question presented is whether appellant was protected from retrial by the constitutional prohibition against double jeopardy.
>
> In *Arizona v. Washington* (1978), 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717, the United States Supreme Court stated:
>
> A State may not put a defendant in jeopardy twice for the same offense. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056 * * *. The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal. * * *
>
> Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's "valued right to have his trial completed by a particular tribunal." [Fn. 11 cites *United States v. Jom* (1971), 400 U.S. 470, 484, 91 S.Ct. 547, 27 L.Ed.2d 543.] The reasons why this "valued right" merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs

11

the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

Unlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate "manifest necessity" for any mistrial declared over the objection of the defendant.

*Id.* at 503-505 (fns. 12-15 omitted).

As Justice Black stated in the United States Supreme Court case in *Wade v. Hunter* (1949), 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974:

* * * What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some cases be subordinated to the public's interest in fair trials designed to end in just judgments.

Justice Black went on to state, as follows:

When justice requires that a particular trial be discontinued is a question that should be decided by persons conversant with factors relevant to the determination. The guiding rule of federal courts for determining when trials should be discontinued was outlined by this Court in *United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165[.] * * * [T]his Court said, 9 Wheat. at page 580, 6 L.Ed. 165:

" * * * We think, that in all cases of this nature, the law has invested

12

Courts of justice with the authority to discharge a jury from giving any verdict whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. * * * "

*Id.* at 689-690.

In *Arizona v. Washington, supra,* the court noted that the term "manifest necessity" cannot be applied mechanically or without attention to the particular problem confronting the trial court. The court noted that "it is manifest that the key word 'necessity' cannot be interpreted literally; instead, contrary to the teaching of *Webste*r, we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." *Id.* at 506. The court went on to note that the question of whether that "high degree" has been reached is more easy to answer in some kinds of cases than in others. The court noted that the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or whether there is reason to believe that the prosecutor is using the superior resources of the state to harass or to achieve a tactical advantage over the accused. However, at the other end of the spectrum, a mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict is appropriate and requires the defendant to submit to a second trial. This rule recognizes society's interest in providing the prosecution with one complete opportunity to convict those who have violated its laws.

The court went on to state that the trial judge's decision should be accorded certain deference because the trial judge is most familiar with the evidence and the background of the case on trial; and the trial judge has listened to the arguments and has observed the apparent reaction of the jurors. *Id.* at 514.

In the present case, prior to the presentation of evidence, the trial judge, the prosecution, and defense counsel discussed, at length, how to properly address the fact that the witnesses who would be testifying in the second trial had been previously called to testify in the first trial. It was agreed that it would be improper to mention that the jury in the first trial had been unable to reach a verdict. As such, it was determined that counsel could refer, on examination of witnesses, to their prior testimony without referencing the fact that the first jury was

13

not able to reach a verdict. The trial proceeded, and witnesses were called, examined and cross-examined, without any improper references to the first trial. However, during closing arguments, defense counsel made the following relevant statements:

* * * Reality is the State cannot prove this case beyond a reasonable doubt. The State cannot prove his case beyond a reasonable doubt. They don't have it. It's not there. Tried before. They couldn't convince the jury then and they can't do it now.

(Tr. Vol. III, at 105-106.

The prosecuting attorney immediately objected to the statements of defense counsel, and the following proceedings occurred outside the presence of the jury:

THE COURT: What are you doing?

[DEFENSE COUNSEL]: I apologize, Your Honor.

THE COURT: Couldn't convince them then. What the hell do you think that kind of impression is going to leave with this jury? We talked about this ahead of time that we were not going to talk about the fact that it was a hung jury the last time. What the heck do you think you've just told these people?

[DEFENSE CO-COUNSEL]: I don't think she told the jury it was a hung jury, Your Honor.

THE COURT: Couldn't reach a verdict the last time. Read it.

Thereupon, the last statement was read by the Court Reporter.

[DEFENSE CO-COUNSEL]: Didn't say the jury was hung, Judge.

[DEFENSE COUNSEL]: I apologize.

THE COURT: What the heck? How could you interpret that other than that? They couldn't convince them the last time.
[DEFENSE CO-COUNSEL]: I don't know, Your Honor.

THE COURT: Then why are we here a second time. They're

14

going to go back and speculate that we didn't do it the last time. Well gee whiz. * * *

[PROSECUTOR]: It's so incredibly prejudiced, the fairness of this case. I cannot even -

THE COURT: I can't believe this.

[PROSECUTOR]:-express. This is why I addressed this well before we did *voir dire*, so this would not be a part of anything because I did not want to taint this and have a third trial on this case. I'm not sure what kind of curative instruction you can give.

THE COURT: Without telling what the heck happened the last time. How in the heck do I cure it by just saying oh, just don't pay any attention to that? It's already done. It's already said. In order to explain to them or to make any sense out of any curative instruction I've got to tell them what the hell happened the last time so that we can understand how this curative instruction makes any sense. I don't know about you, I can't see it.

[DEFENSE CO-COUNSEL]: If I could, Your Honor, the jury already knows that there was a previous trial in this case.

THE COURT: Right.

[DEFENSE CO-COUNSEL]: I think instructing-providing a curative instruction to the jury that they're not to consider the outcome of any other proceedings in reaching a verdict in this case would be appropriate.

THE COURT: I don't think that solves it. What do you think?

[PROSECUTOR]: No. I think that that's the bare minimum. You can't tell her that she was mistaken because she's not and that would be prejudiced to the defense in putting some kind of impunity on that.

THE COURT: I'm taking the jury out.

(Tr. Vol. III, at 106-108.) Thereupon, the following proceedings were

15

held outside the presence and hearing of the jury:

THE COURT: I don't frankly think there's any way to fix it. What do you think?

[PROSECUTOR]: Well, my desire is to try and carve out some way to fix it, but at this moment it escapes me as to how we can give an instruction that would unring the bell in a manner that would then not be prejudicial to the defense because you can't disparage [defense counsel] for making the statement or somehow imply that her statement was wrong without hurting the fairness to their side. And I think at this point now they knew, I agree with [defense co-counsel] in saying that they were aware that there was prior testimony or at best a trial. They can probably very logically conclude that there was a prior trial because the numbers of witnesses have said yeah, I testified before.

But to say that at this point couldn't convince the jury last time, I don't think that those 12 people individually or as a group are going to be able to say well, you know, didn't reach a decision, they hung.

THE COURT: We can't either.

[PROSECUTOR]: Or we'll give you the option of saying we don't have to, we have an easy out because that's what happened the last time as well as being something we had said earlier we were not going to talk about and it comes up at the worst possible moment.

[DEFENSE CO-COUNSEL]: Your Honor, if I could just briefly. As we understood the Court's ruling prior to trial and we're certainly cognizant of that, the Court's ruling was we were not to instruct the jury there was a hung jury or that they were somehow bound by the decisions of any previous proceedings. The defense did not say that. [Defense counsel] did not say that in her closing remarks. And simply put, there's not-there's no need to unring the bell. To the extent that there might be any confusion on the part of the jury at this point, a curative instruction which is the preferred remedy as I understand it for the Court of Appeals in any situation where there's confusion to the jury, a curative instruction would be

16

the appropriate remedy at this point.

The jury can be instructed that they are not to be bound by the outcome of any prior proceedings. That doesn't tell the jury there was a conviction, a mistrial, or an acquittal. It doesn't tell them anything about the previous proceedings. We have not told them what the jury verdict was or was not in a previous proceeding. And what they heard was what they already knew which was there was a prior trial because we've been talking about it for three days, Your Honor.

So a curative instruction, we submit, would be the appropriate remedy. We certainly did not intentionally violate any orders of this Court. [DEFENSE COUNSEL], I know, did not do that. And a curative instruction will cure any potential confusions the Court is concerned about, Judge.

THE COURT: Well, you know, whether it was intentional or not-I don't believe it was intentional, but it's kind of a deal if I drive my car down the street and I hit another car, whether it's an accident or I do it on purpose, the effect is we've got a bunged [sic] up car. And what we have right how is a screwed up case. What else do you want to say, [Prosecutor]?

[PROSECUTOR]: I don't disagree with [defense co-counsel] in the fact that the jury can easily conclude that there was another trial. I don't think that hurts either side of the fairness of the trial. But I do not-I cannot disagree stronger that this jury can make any conclusion other than the jury hung last time. We've talked repeatedly since *voir dire*. The State has, the defense has. And State having to meet a burden of proof, the State having to prove everything. We had to prove all those elements.

She suggested we didn't do it last time and here we are now. I don't think there's any group of people that you can pick as 12 or somebody not going to make that conclusion. So I think that that's what I understand making that position as an argument. I think the logic of that escapes me.

[DEFENSE CO-COUNSEL]: If I could, Your Honor, the reason it's not just an argument, it's a good judgment argument. This jury know that they're the second jury on this

17

case. We didn't add anything to the body of knowledge. It was just it's [sic] argument, it's [sic] argument that we understood and certainly [Defense Counsel] understood to be within the confines of this Court's order.

[THE COURT]: No, it isn't within the confines of the Court. Yes, we did agree that we could talk about the fact that there was a prior case. We all agreed that. No, we never got to the point of saying they couldn't do it the last time and you may have trouble, too. No. That was not a part of the original agreement. And you can argue till the cows come home, but that is not a part of the original agreement.

No one ever disputed the fact that you could talk about there being a prior case. We have talked about it ad nauseam in here that there was a prior case and they testified before and how they testified and looking at the transcripts and all that. That has nothing to do with the issue here.

What the issue is here is the fact that there's [sic] the jury is aware now that the last time they couldn't handle the evidence and couldn't come back with a verdict and by God here we are again. That's exactly the impression I have and I'm sure [the prosecutor] is going to-is on the same page.

[PROSECUTOR]: Absolutely, Your Honor.

[DEFENSE CO-COUNSEL]: Judge, with all due respect, that jury already thinks that. They know they're the second jury in this case, Judge.

THE COURT: They don't know why.

[PROSECUTOR]: And there are-

[DEFENSE CO-COUNSEL]: Precisely.

[PROSECUTOR]:-a number of reasons why there's a second trial.

THE COURT: There could have been a mistrial the last time. It very easily could have been a mistrial. Could have been something that we couldn't get beyond. It could have been a

mistrial, in addition to being a hung jury. There could be a variety of reasons why this thing didn't go. But the fact that they couldn't' reach a verdict the last time, there's only one way to go with that and that is well gee whiz, we can't do it either.

I declare a mistrial. I'll tell the jury.

(Tr. Vol. III, at 109-114.)

In the present case, defense counsel up-ended the level playing field by stating that the state could not prove its case to this jury, just as the state was unable to prove its case with the previous jury. Clearly, the comment was improper. Furthermore, the comment was prejudicial to the state and its case. As such, the trial court was left to determine whether or not a remedy could be fashioned which would remove that prejudice or not.

Appellant urges this court to apply the rationale espoused by the Sixth Circuit Court of Appeals in *Johnson v. Karnes* (C.A.6, 1999), 198 F.3d 589. However, while instructive, decisions from the Sixth Circuit are not binding on this court. In *Johnson,* as in the present case, defense counsel made an improper statement during cross-examination of the victim, and the prosecuting attorney objected. The trial judge allowed a brief recess and then held a side-bar conference with defense counsel and the prosecuting attorney. The trial judge stated that the question was impermissible and, in his opinion, the situation could not be cured. The judge told the prosecuting attorney that if he wanted a mistrial, the trial judge would grant it. The prosecuting attorney then asked for a mistrial, and the trial judge granted it.

The defendant filed a motion to dismiss on double jeopardy grounds, and the trial judge denied the motion. Thereafter, the defendant filed a habeas petition with the Sixth Circuit.

In determining that the trial court was incorrect in granting the mistrial, the court noted that the trial court had pressured the prosecutor to decide whether he wanted a mistrial; the court granted only a very brief recess; the court did not seriously consider other alternatives to a mistrial; and the court's attitude was to punish the wrongdoer. As such, the court in *Johnson* determined that the trial judge had failed to exercise sound discretion in declaring a mistrial.

19

In his dissenting opinion, Judge Boggs noted that the primary case cited by the court to support its decision, *Harpster v. Ohio* (C.A.6, 1997), 128 F.3d 322, had been premised on defense actions which allegedly justified the mistrial that were either not erroneous at all, or, if any prejudice resulted, that prejudice was minuscule. Judge Boggs indicated that the case was more analogous to *Arizona v. Washington,* where the United States Supreme Court upheld a mistrial granted because of comments made by a defense attorney in opening statements that introduced impermissible material. The court did so, even though the trial court had not made an explicit finding of "manifest necessity."

In reviewing the record in the present case, this court finds that the trial judge in the instant matter did not abuse her discretion in granting a mistrial. The statement by defense counsel was improper, and it violated the prior agreement entered into between the court and counsel. Second, the comment was prejudicial to the state. Third, the trial judge did consider other alternatives. The prosecuting attorney was not able to verbalize an appropriate potential instruction, and the trial judge did not agree with the statements made by defense counsel that the prejudicial effect of defense counsel's statement could be removed. Again, as Justice Black had stated, a defendant's right to have his trial completed by a particular tribunal must in some cases be subordinated to the public's interest in fair trials designed to end in just judgments. Upon review, this court finds that the granting of a mistrial was appropriate and that, with the exception of the count of having a weapon while under disability, which was tried to the court and not the jury, subsequent prosecution of all the remaining counts were properly retried in the third trial. As such, with the very limited exception above-noted relative to the charge of having a weapon while under disability, appellant's first assignment of error is sustained in part and overruled in part.

Exhibit E to Return of Writ.

The decision of the state appellate court is presumed to be correct. 28 U.S.C. §2254(d), (e) provide:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id.*

A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner. *Id.* at 413, 120 S.Ct. 1495.

*Maldonado v. Wilson,* 416 F.3d 470, 475 (6th Cir.2005).

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the state through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165 (1977).

> The Double Jeopardy Clause... precludes the State from making " 'repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity.'" *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976) (quoting *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)). It protects defendants in cases "in which a judge exercises his authority to help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused." *Gori v. United States,* 367 U.S. 364, 369, 81 S.Ct. 1523, 1526-27, 6 L.Ed.2d 901 (1961). It also protects the defendant's "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); *accord Arizona v. Washington,* 434 U.S. 497, 503-04, 98 S.Ct. 824, 829-30, 54 L.Ed.2d 717 (1978); *Dinitz,* 424 U.S. at 606, 96 S.Ct. at 1079; *Jorn,* 400 U.S. at 484-85, 91 S.Ct. at 556-57.

*Harpster v. Ohio, supra,* 128 F.3d at 327. After a mistrial is declared, "retrial is barred unless the defendant consented to the mistrial, or there was 'manifest necessity' for the mistrial." *Id.,* at 327-28, citing *Arizona v. Washington,* 434 U.S. at 505; *see also Glover v. McMackin*, 950 F.3d 1236, 1239 (6th Cir. 1991).   The Supreme Court explained the reasons underlying the Constitution's protection of a criminal defendant's right "to have his trial completed by a particular tribunal":

> Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

*Arizona v. Washington, supra,* 434 U.S. at 503-504.    It is the prosecutor's burden to establish the manifest necessity for a mistrial. *Id.,* at 505.  "His burden is a heavy one."  *Id.*

> The Supreme Court first enunciated the "manifest necessity" doctrine in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). The Court held that a judge may declare a mistrial and discharge a jury when "taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Id*. at 580.

*Johnson v. Karnes*, 198 F.3d 589, 594 (6th Cir. 1999).  "To be sure, the power [to declare a mistrial] ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes."  *Perez, supra*, 22 U.S. at 580.

In *Arizona v. Washington, supra*, 434 U.S. at 516, n.4, defense counsel improperly advised the jury in opening statements that a new trial had been granted in the case because the prosecutor had deliberately withheld exculpatory evidence from the defense.  The Supreme Court affirmed the trial court's decision to declare a mistrial based on manifest necessity, holding that the trial judge's determination of possible juror bias was entitled to "the highest degree of respect." *Id.*, at 512, 513. The Supreme Court stated that manifest necessity does not require that a mistrial be "strictly 'necessary.'" *Id.*, at 512.  It does require a "high degree" of necessity. *Glover v. McMackin,* 950 F.2d 1236, 1240 (6th Cir. 1991).  Further,

> [t]he trial judge... "must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States v. Jorn*, 400 U.S., at 486, 91 S.Ct., at 558 (Harlan, J.). In order to ensure that this interest is adequately protected, reviewing courts have an obligation to satisfy themselves that, in the words of Mr. Justice Story, the trial judge exercised "sound discretion" in declaring a mistrial.

> Thus, if a trial judge acts irrationally or irresponsibly, *cf. United States v. Jorn, supra; see Illinois v. Somerville*, 410 U.S., at 469, 93 S.Ct.,

23

at 1072, his action cannot be condoned.

*Id.*, at 514.  The Supreme Court noted in *Arizona v. Washington* that

> the trial judge did not act precipitately in response to the prosecutor's request for a mistrial. On the contrary, evincing a concern for the possible double jeopardy consequences of an erroneous ruling, he gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial.... [T]he trial judge acted responsibly and deliberately, and accorded careful consideration to respondent's interest in having the trial concluded in a single proceeding. The trial court heard argument from both sides, and considered the alternative of issuing a cautionary instruction.

*Id.*, 515-516.

Decisions of the United States Court of Appeals for the Sixth Circuit also provide guidance for determining whether there existed manifest necessity for a mistrial.  In *Harpster v. Ohio,* above, the defendant was charged with sexual abuse, which carried a life sentence.  A pre-trial order barred any mention of the sentence defendant faced.  During cross-examination of a police officer to whom the defendant confessed, defense counsel elicited testimony that petitioner could not obtain probation if he was convicted. *Harpster v. Ohio, supra*, 128 F.3d at 324. The trial court declared a mistrial, ruling that defense counsel had violated the pre-trial order prohibiting any mention that petitioner faced a life sentence if convicted.  The Sixth Circuit held that no manifest necessity for the mistrial existed and double jeopardy therefore barred a retrial, despite the high deference due a trial judge's decision regarding possible jury bias from the admission of prohibited evidence, and despite the trial court's ruling that defense counsel had violated the pre-trial order.  *Id.*, at 328-30, citing *Arizona v. Washington, supra*, 434 U.S. at 509-10.

[W]e decline to hold that the trial court had manifest necessity to

24

> declare a mistrial merely because it considered defense counsel's
> conduct to have violated its pre-trial order.

*Id.*, at 330.  In reaching this conclusion, the Sixth Circuit noted it was vital to the defense to establish

that Harpster knew, at the time he confessed, that he would receive a harsh sentence if convicted. *Id.*,

at 329.  However, the Sixth Circuit held that "a simple corrective instruction would have sufficiently

protected against juror bias." *Id.*, at 330.

Similarly, in *Johnson v. Karnes*, 198 F.3d 589, 594 (6th Cir. 1999), the United States Court

of Appeals for the Sixth Circuit held that no manifest necessity for the mistrial existed where defense

counsel on cross examination introduced evidence regarding petitioner's acquittal on a related charge.

Critical to the Sixth Circuit's decision in *Johnson v. Karnes* was the trial court's rush to declare a

mistrial without seriously considering its alternatives.  *Id.*, at 595:

> In those cases in which we have found that the trial judge exercised
> "sound discretion" in finding that manifest necessity compelled a
> mistrial, the trial judge engaged in "careful consideration and
> solicitude for the serious consequences attendant upon mistrials...."
> *Glover,* 950 F.2d at 1241; *see also Washington,* 434 U.S. at 515-16,
> 98 S.Ct. 824 (noting that "the trial judge did not act precipitately," but
> rather, "evincing a concern for the possible double jeopardy
> consequences of an erroneous ruling, he gave both defense counsel
> and the prosecutor full opportunity to explain their positions on the
> propriety of a mistrial"); *United States v. Gantley,* 172 F.3d 422, 425,
> 428-29 (6th Cir.1999)(*per curiam)*(finding a mistrial warranted where
> defendant "impliedly consented" to a mistrial and defendant, while
> testifying on cross-examination, stated that the prosecutor knew he
> was "telling the truth, because [the prosecutor] saw the polygraph test
> [he] took in the past"); *United States v. Simpson,* 1991 WL 1333, at
> *5, 922 F.2d 842 (6th Cir. 1991) (finding that the trial judge exercised
> sound discretion in declaring the mistrial where the trial judge "held
> an extensive hearing on the effects and repercussions of the
> evidentiary errors" and "took a night to deliberate over the question
> of whether a mistrial was necessary").

*Id.*, at 595-96.

This Court is required to accept the state court's conclusion that defense counsel violated the pretrial order prohibiting reference to the prior jury's inability to reach a judgment on the charges. Prior to trial, the following discussion took place in regard to the prosecutor's request for direction from the Court as to how to deal with testimony of witnesses who had previously testified against petitioner at his prior trial, and particularly with cross examination of Kambon Kali, who was previously a co-defendant in the prior trial, but agreed to testify against petitioner mid-trial.

> MR BOKELMAN: ... Your Honor, how would the Court like us to handle the prior testimony under oath? ... I'm asking for some direction as to how the Court would like us to handle that.

> COURT: Do you have an opinion about that?

> MR. THOMAS [Defense counsel]: Yes, Your Honor.

> ***

> ... In particular with respect to Kambon Kali. His previous testimony did occur in this trial. In fact, a trial that he was in the middle of is very relevant for the jury. The facts and circumstances of .... Kambon Kali's agreement and the environment at which he decided to testify is [sic] very relevant.

> ***

> MR. BOKELMAN: ... [I]s it okay for you if we tell the jury, hey, there was a previous trial, or do you want us to say that there was testimony given under oath?

> COURT: Well, I don't know....

Clearly we can say in a prior proceeding you testified under oath. I don't know whether you would consider – either side would consider mentioning a hung jury as being, you know, an indicative of how difficult the case is or maybe they can hang or whatever. I don't know. Do you think that would prejudice the jury? I don't know.

MR. BOKELMAN: My concern is if they realize that one jury has hung, they will realize that there is, therefore, an option for them and then we'll end in the same situation.

COURT: That's what I said. I don't know.

MR. BOKELMAN: Clearly Mr. Thomas and myself, Ms. Tome, both parties have the option, if need be, saying, hey, you gave prior testimony when you were sworn before and said XYZ. Absolutely agree that that's admissible and relevant. I just don't know if we want to say, hey, at the last trial which hung.

COURT: Yeah. Do you have an opinion, Mr. Thomas, about that?

MR. THOMAS: Obviously we don't want to mislead the jury. We don't want to try to interfere with their ability to reach a decision in this case. But the fact that this guy, Kambon Kali, actually testified in a jury trial given the particular circumstances is relevant. So we do intend to cross examine him about that.

COURT: I don't think there's a problem about cross-examining him, but whether or not we indicate that the jury hung in the last trial is the issue that is the sticky one. And I'm inclined to think probably the safest way to go is that you testified in a prior proceeding under oath and you said X and today you're saying Y. How does that fit in with your talking about Kali flipping in the middle of the last trial?

MR. THOMAS: We intend to say basically what you just said, Judge. We won't mention that the jury hung. I don't want to interfere with this jury's ability to reach a verdict, of course.

COURT: I think that is a dangerous place for us to be.

27

MR. THOMAS: But candidly, the fact that he flipped in the middle of trial is relevant.  And it goes to the –

COURT: I don't have a problem with that.  It's just how we do that.

MR. THOMAS: We will not say that the jury hung in that case.  We will not say the jury failed to reach a verdict.  I won't use the word verdict, but the fact that he was in trial with Cory Colvin, we do absolutely intend to cross examine him on.

***

COURT: ... I guess the best bet would be [to say] a prior proceeding wherein you testified under oath.

*Transcript, Exhibit P to Return of Writ,* at 4-8.  The parties agreed that a jury instruction would be issued prior to deliberations advising the jury that they could not consider evidence of the prior proceeding for purposes other than considering the credibility of the witnesses.  *Id.*, at 8-9.  As noted by the state appellate court, at trial, prosecution witness and former co-defendant Kali acknowledged that he had testified in prior trial proceedings, and that he made a deal with the prosecutor to testify against petitioner mid-trial.  Kali had pleaded guilty to felonious assault, and was serving a five year prison term, with credit for approximately nine months time already served.  He had faced fifteen years.  *Id.*, at 189-198.  Thus, it is undisputed from the record that the jury knew that there had been a prior trial.

Before declaring a mistrial, the trial judge gave both the prosecutor and defense counsel an opportunity to explain their positions about whether the law required a mistrial.  *See Arizona v. Washington*, 434 U.S. at 515-16.  The focus of a trial judge's manifest necessity determination is whether a mistrial is necessary to provide the prosecution and the defense a fair trial untainted by bias.

28

*Arizona v. Washington,* 434 U.S. at 516. If a trial judge "discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his 'valued right to have his trial completed by a particular tribunal.'" 434 U.S. at 509. When a curative jury instruction is sufficient to guarantee both the prosecution and the defense a fair trial, there is not manifest necessity for a mistrial. *Harpster,* 128 F.3d at 330.

> The Sixth Circuit has gleaned a "general approach" to the question of "manifest necessity" from the Supreme Court's decision in *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973):

> The Court held that "[a] trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial." These two criteria explain most, but not all, of the circumstances in which federal courts have permitted re-prosecution following a mistrial.

> *Stevens,* 177 F.3d at 584 (quoting *Somerville,* 410 U.S. at 464). The first category includes cases of a hung jury, as well as "cases in which the jury is incurably tainted." *Id.* The second category covers cases of serious error which would guarantee reversal of any conviction. *Id.*

> Where a trial judge has identified possible juror bias as the basis for a declaration of mistrial, that "determination is entitled to special respect." *Brady v. Samaha,* 667 F.2d 224, 228 (1st Cir.1981) (quoting *Washington,* 434 U.S. at 510). Nonetheless, the role of a reviewing court is to ensure "that the trial judge engaged in a 'scrupulous exercise of judicial discretion' in making the decision that a mistrial was necessary." *Id.* (quoting *Jorn,* 400 U.S. at 485).

> Significant in that determination is whether or not the record indicates that the judge considered alternatives to a mistrial. *Id.* at 229 (citing *Jorn,* 400 U.S. at 487, and other cases). *See also, Gilliam,* 75 F.3d at 895 (appropriate consideration to alternatives less drastic than mistrial). Also of major importance is affording counsel an opportunity to be heard on the subject. *Id.* (citing *Washington,* 434 U.S. at 514-515 n. 34, and other cases).

> A major concern is "the amount of time devoted by the judge to the

> mistrial decision. A precipitate decision, reflected by a rapid sequence of events culminating in a declaration of mistrial, would tend to indicate insufficient concern for the defendant's constitutional protection." *Id.* (citing *Jorn,* 400 U.S. at 487, and other cases). If the record reveals that the trial judge has failed to engage in a scrupulous exercise of discretion, there has been an abuse of the "sound discretion" entrusted to her. *Id.*

*Ross v. Petro*, unpublished, 2005 WL 1126758 (N.D. Ohio May 3, 2005).

Here, the trial judge removed the jury and heard the arguments of counsel regarding the effect of defense counsel's implicit argument that this jury should acquit because a previous jury heard the evidence and had been unable to unanimously conclude beyond a reasonable doubt that Colvin committed murder. Counsel knew that the trial judge was at least leaning toward declaring a mistrial. (Tr. Vol. III, at 109-111.) Both the prosecutor and defense counsel made suggestions regarding a curative instruction. The trial judge considered and rejected a curative instruction. In her opinion, the bell had been rung. The jurors had heard defense counsel's argument that a previous jury had not convicted, so they also should not. The trial judge told counsel that she did not think there was any way to eliminate the prejudice to the prosecution. The prosecutor had no suggestions. Defense counsel then acknowledged that they understood that the court had ordered that they not refer to the earlier hung jury, but asserted that they did not make that argument to the jury. That assertion simply was not supported by the record. Defense counsel told the jury:

> The State cannot prove his case beyond a reasonable doubt. They don't have it. It's not there. **Tried before. They couldn't convince the jury then and they can't do it now.**

(Emphasis added.)

The trial judge firmly rejected that argument but permitted counsel to continue to recommend

30

a path other than mistrial. The prosecutor stated that the prejudice from defense counsel's argument that the first jury didn't convict so you can't either was not curable. Defense counsel countered that the jury already knew that they were the second jury to hear the case. The trial judge pointed out that the question was not whether there had been an earlier trial–which the jury knew–but that defense counsel told them that the earlier jury did not reach a verdict. Because defense counsel's argument was based on a fact not known to the jurors–that the reason for the first mistrial was that the jurors could not reach a verdict–the trial judge declared a mistrial:

> COURT: ... What the issue is here is the fact that there's a jury is aware that the last time they couldn't handle the evidence and couldn't come back with a verdict and by God here we are again.
>
> ***
>
> There could be a variety of reasons this thing didn't go. But the fact that they couldn't reach a verdict the last time, there's only one way to go with that and that is well gee whiz, we can't do it either.
>
> I declare a mistrial.

As discussed, the state appellate court affirmed the trial court's decision as follows:

> [T]his court finds that the trial judge in the instant matter did not abuse her discretion in granting a mistrial. The statement by defense counsel was improper, and it violated the prior agreement entered into between the court and counsel. Second, the comment was prejudicial to the state. Third, the trial judge did consider other alternatives. The prosecuting attorney was not able to verbalize an appropriate potential instruction, and the trial judge did not agree with the statements made by defense counsel that the prejudicial effect of defense counsel's statement could be removed. Again, as Justice Black had stated, a defendant's right to have his trial completed by a particular tribunal must in some cases be subordinated to the public's interest in fair trials designed to end in just judgments. Upon review, this court finds that

31

the granting of a mistrial was appropriate.

Exhibit E To Return of Writ.  Exhibit P to Return of Writ, *Transcript*, at 113-114.

While it is possible that I might not have reached the same conclusion, the trial judge considered all the facts and all the arguments made by counsel for and against a mistrial.  The state court's determination of manifest necessity is binding on a federal habeas corpus court unless it is contrary to or an unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1).  The fact that a federal judge might have made found that there was not manifest necessity for a mistrial is not alone sufficient to issue the writ of habeas corpus.  Petitioner must demonstrate that the state court's application of clearly established federal law was unreasonable. *Walls v. Konteh,* 490 F.3d 432 (6th Cir. 2007).  I cannot say that the Ohio court's decision that there was manifest necessity for a mistrial was contrary to or a misapplication of clearly established federal law as determined by the United States Supreme Court.  28 U.S.C. §2254(d); *Williams v. Taylor, supra.*

## III.  CLAIM TWO

In claim two, petitioner asserts that the evidence was constitutionally insufficient to sustain his convictions on attempted murder and felonious assault with specifications.   The state appellate court rejected this claim as follows:

> [A]ppellant argues that his convictions are not supported by sufficient evidence and that they are against the manifest weight of the evidence. For the following reasons, this court disagrees.
>
> The test for reviewing the sufficiency of the evidence was set forth in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

***

Viewing the sufficiency question, this court concludes that the evidence was sufficient. Viewing the evidence in a light most favorable to the prosecution, Givens testified that appellant called her a "bitch," and she saw him lean out of the car. Furthermore, Stoumile testified that appellant was in the passenger seat and it was that side of the car that was closest to Givens' apartment. As such, this court finds that the evidence was sufficient to support the convictions.

Turning to the manifest weight issue, this court cannot find that the trial court's determination was against the manifest weight of the evidence. Appellant argues that the state's witnesses gave inconsistent accounts of the shooting. However, after reviewing the record, this court notes that defense counsel was able to cross-examine the state's witnesses and brought the inconsistencies to the jury's attention. The jury was free to believe all, part, or none of the testimony of each witness. The testimony of the victim, Givens, standing alone would have been sufficient to support a conviction. Upon review, this court cannot find that the jury lost its way, and we conclude that the judgment was not against the manifest weight of the evidence. Defendant's second assignment of error is not well-taken and is overruled.

Exhibit E to Return of Writ; *State v. Colvin*, 2005 WL 704818 (Ohio App. 10 Dist. March 29, 2005).

Again, the factual findings and decision of the state appellate court are presumed to be correct. 28 U.S.C. §2254(d), (e). Review of the record fails to indicate that habeas corpus relief is warranted. *See Williams v. Taylor, supra.*

Petitioner argues that the evidence failed to establish that he was the actual shooter; that

witness statements were inconsistent; and that the police investigation was inadequate and incomplete.  To the extent that petitioner asserts in these habeas corpus proceedings that his convictions were against the manifest weight of the evidence, such claim is not appropriate for federal habeas corpus review.  The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without enough proof to allow a rational trier of fact to find guilt beyond a reasonable doubt.  *Walker v. Engle,* 703 F.2d 959, 969 (6th Cir.1983).  In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find teach element of the crime beyond reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses. *Jackson,* 443 U.S. at 319; *Walker,* 703 F.2d at 969.

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a "thirteenth juror" and review the entire record, weight the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida,* 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, any claim that petitioner's conviction was against the manifest weight of the evidence cannot be considered by this Court.

34

That said, before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia, supra,* 443 U.S. ta 319. To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West,* 505 U.S. 277, 296 (1992)(citing *Jackson,* at 319.) The prosecution is not affirmatively required to "rule out every hypothesis except that of guilty." *Id.* (quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume-even if it does not appear on the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id.* (quoting *Jackson,* at 326).

For the reasons discussed by the state appellate court, this Court likewise concludes that, viewing all of the evidence in the light most favorable to the prosecution, *Jackson v. Virginia, supra*, the evidence was constitutionally sufficient to sustain petitioner's convictions, even when based on the testimony of the victim alone.

Claim two is without merit.

## IV.  CLAIM THREE

In claim three, petitioner asserts that submission of "materially incomplete" written jury instructions and exclusion of petitioner and his attorney from proceedings involving re-instruction of the jury violated his right to due process, jury trial, and counsel.

The state appellate court rejected this claim as follows:

[A]ppellant contends that the trial court erred by submitting an

35

incomplete set of written instructions to the jury and that the trial court further erred by subsequently failing to follow proper procedures for responding to the jury's request for additional instructions. Specifically, the court orally gave the jury certain instructions before the case began. Those instructions explained trial procedure, stipulations, the role of the attorneys, objections, both direct and circumstantial evidence, how to determine issues of credibility, note-taking, and confidentiality. These same instructions were orally repeated to the jury at the close of the evidence. At the close of the evidence, the trial court further instructed the jury relative to the various counts with which appellant was charged and provided those instructions to the jury in written form as well.

At some point during deliberation, the jury sent the following written question to the judge, which is contained in the record but was not made part of the transcript: "Can we get instructions on how to judge the credibility of a witness?"

Because the court's response to the jury's question was not in the transcript, the state filed a motion requesting that it be permitted to supplement the record with the August 13, 2004 decision and judgment entry from the trial court granting the prosecution's motion to correct the record. This court granted the motion. In that entry, Judge Miller noted, as follows:

It is the custom of this Court to read the credibility instruction to the jury both prior to the commencement of the trial, and again, following final arguments as part of the general charge to the jury. Further, it is the custom of this Court to send back to the jury the instructions specifically related to the felony or felonies with which the defendant is charged. Therefore, the jury in Colvin's case would have received specific instructions related to felonious assault with a specification and attempted murder with a specification. The weapon under disability charge was tried to the Court.

During the course of deliberations, the jury sent out a question asking for the credibility instruction. All counsel were called to chambers, appeared, and decided, along with the Court, that the credibility instruction should be copied and sent in to the deliberating jury. The Court failed to put the question on the record by reading same to the court reporter but gave the question to the court reporter for inclusion on the record. Having a consensus from counsel that a copy of the credibility instruction should be provided to the jury, which it was, the

credibility instruction was then subsequently included in the record along with the particularized instructions relating to the felonies with which Colvin was charged.

Thereafter, the following written charge was given to the jury in response:

The involvement of a witness in the alleged offense may affect the witness' credibility and make the witness' testimony subject to grave suspicion, and requires that it be weighed with great caution.

It is for you, as jurors, in the light of all of the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.

Appellant does not contend that the trial court's entry is not an accurate reflection of the court's response to the jury's question. Nor does appellant contend that defense counsel was not present and did not agree to the method utilized by the trial court. Instead, appellant cites R.C. 2945.10(G), which provides, in pertinent part, as follows:

The court, after the argument is concluded and before proceeding with other business, shall forthwith charge the jury. Such charge shall be reduced to writing by the court if either party requests it before the argument to the jury is commenced. Such charge, or other charge or instruction provided for in this section, when so written and given, shall not be orally qualified, modified, or explained to the jury by the court. * * *

Appellant also cites Crim.R. 22 and 43(A), which require that all proceedings shall be recorded in serious offenses and that counsel should be present at every stage of the proceedings.

First, appellant contends that, inasmuch as the trial court submitted a portion of the jury instructions to the jury in writing, the trial court was somehow required to reduce all of the jury instructions to writing. However, appellant has not cited any statute or case law which would require the trial court to do so. Second, while R.C. 2945.10(G) provides that, after written instructions are submitted to the jury, the trial court may not orally qualify, modify, or explain them, the trial court did not do so in the present case. Instead, after discussing the issue with counsel, the trial court gave the jury a portion of the original instruction given with regard to witness credibility. Nothing in that instruction qualified, modified, or explained the instruction to

37

the jury.

Furthermore, while the trial court did fail to make a record of this portion of the proceedings, appellant has neither shown that he was prejudiced, nor has he shown that counsel was not present. Instead, the entry by Judge Miller indicates that counsel was present and that counsel agreed with how the issue was to be handled. Stated previously, appellant does not challenge any of the statements made by the trial judge in the entry explaining what transpired relative to the jury's question. As such, this court cannot find that appellant was not duly represented by counsel at this stage of the proceedings. As such, based upon the foregoing, appellant's third assignment of error is overruled.

Exhibit E to Return of Writ; *State v. Colvin, supra*. Again, the factual findings and decision of the state appellate court are presumed to be correct. 28 U.S.C. §2254(d), (e).

To the extent that petitioner asserts a violation of state law, such claim is not appropriate for federal habeas corpus review. A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6thCir. 1988). A federal court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

Additionally, petitioner's federal constitutional claim is plainly without merit.

> The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all "critical stages" of the criminal process. *United States v. Wade,* 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Plea negotiations, guilty plea hearings, and sentencing hearings are all "critical stages" at which the right to counsel attaches. *United States v. Sammons,* 918 F.2d 592, 602 (6th Cir.1990); *French v. Jones,* 332 F.3d 430, 439 (6th Cir.2003). Although the Constitution does not force a lawyer upon a defendant, it does require that any waiver of the right to counsel be knowing, voluntary, and intelligent. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

*King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006).  However, the United States Court of Appeals for the Sixth Circuit has held that re-instructing the jury on a jury instruction that previously has been issued, such as occurred in this case, does not constitute a critical stage of the proceedings requiring the presence of the defendant or his attorney.  *Hudson v. Jones,* 351 F.3d 212, 217-218 (6th Cir. 2003), citing *United States v. Morrison*, 946 F.2d 484, 503 (7th cir. 1991); *United States v. Harris,* 9 F.3d 493 (6th Cir. 1993); *Gonzalez-Gonzalez v. United States*, No. 2-1243, 2002 WL 31416029 at *2, 49 Fed.Appx. 322 (1st Cir. October 29, 2002); *United States v. Toliver*, 330 F.3d 607, 614 (3d Cir.2003).

Moreover, *Caver v. Straub*, 349 F.3d 340 (6th Cir. 2003), referred to by petitioner, is not analogous to the scenario here.  *Caver v. Straub, supra,* "involved new and supplemental information conveyed to the jury" and the United States Court of Appeals expressly noted that it was expressing "no opinion on whether or not a jury re-instruction that does not convey new and supplemental information is ... a"critical" stage in a trial." *Id*., at 350, n.8.

Further, this Court agrees with the conclusion of the state appellate court, that petitioner has failed to demonstrate how he was prejudiced by the trial court's re-instructing the jury with written

instructions on credibility.

Claim three is without merit.

## VI.  CLAIM FOUR

In claim four, petitioner asserts that he was denied due process and the assistance of counsel because the trial court granted the prosecutor's motion to correct the record on what took place involving re-instruction of the jury in this case.  In support of this claim, petitioner now alleges, in contradiction to the state appellate court's findings of fact, that trial counsel in fact did not agree to submission of a written set of credibility instructions to the jury.  *Petition*, at 11.

Notably, this claim was never been presented to the state courts.  Thus, the claim appears to be procedurally defaulted.  *See Maupin v. Smith*, *supra*.  However, respondent did not raise the issue of procedural default as to claim four, and the affirmative defense of default ordinarily is waived if not raised in the first instance.  *Trest v. Cain,* 522 U.S. 87, 89, 118 S.Ct. 478 (1997);  *Gray v. Netherland,* 518 U.S. 152, 166 (1996).  This Court therefore will address the merits of the claim.

As previously discussed, however, factual findings of the state appellate court are presumed to be correct.  28 U.S.C. §2254(e).  Further, petitioner's allegation that his attorney did not agree to re-instructing the jury is without any support.  Additionally, he never made any such allegation on direct appeal.  *See* Exhibit C to Return of Writ.  Finally, even assuming, *arguendo,* that trial counsel was not present and did not agree to the trial court's re-instructing the jury on credibility instructions that had been previously issued would not warrant federal habeas corpus relief.  *See United States v. Harris, supra; United States v. Morrison, supra; United States v. Toliver, supra* (all concluding that re-instructing the jury without the presence of counsel on instructions previously issued was

40

constitutionally permissible.)

For all of the foregoing reasons, claim four is without merit.

## VII. CLAIM FIVE

In claim five, petitioner asserts that he was denied a fair trial due to improper admission of hearsay evidence against him. Specifically, petitioner complains that the victim improperly testified that her sister's boyfriend killed Mike Rispress. Petitioner contends that this hearsay evidence prejudiced him because the State argued that petitioner shot the victim in retribution for Rispress' murder, and therefore, such testimony established his motive for attempted murder and felonious assault. *Petition*, at 12A.

The state appellate court rejected this claim as follows:

> It is well-established that the admission or exclusion of relevant evidence rests within the sound discretion of the trial court and that a ruling by the trial court as to the admissibility of evidence will not be disturbed by a reviewing court absent an abuse of discretion. *State v. Robb* (2000), 88 Ohio St.3d 59, 723 N.E.2d 1019. An abuse of discretion connotes more than an error of law; it connotes an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. A trial court's decision admitting or excluding evidence will not be reversed absent a clear showing of an abuse of discretion and material prejudice to the defendant. *State v. Hymore* (1967), 9 Ohio St.2d 122, 224 N.E.2d 126.

> During her testimony, Givens testified that her sister's boyfriend was the person who shot and killed Mike Rispress. Defense counsel objected, and the trial court overruled it. Appellant cites Evid.R. 602 and argues that a witness is not permitted to testify on a matter as to which the witness does not possess personal knowledge. Appellant argued that the statement was hearsay and that the state did not offer an exception.

> A witness is precluded from testifying on hearsay grounds as to

41

statements made by another only when the statement is being offered to prove the truth of the matter asserted in the statement. *See State v. Carter* (1995), 72 Ohio St.3d 545, 651 N.E.2d 965. In the present case, there was no out-of-court declarant, and the state argued that the matter was not being offered to prove the truth, that Givens' sister's boyfriend killed Rispress, but to explain why Givens was upset and concerned for her safety before the shooting. Nothing in Givens' testimony linked appellant with the shooting death of Rispress, nor did Givens indicate that she was personally afraid of appellant. Instead, she testified that she had known him for some time, and she spoke to him that evening immediately before the shooting. This court finds that, not only was the statement not hearsay, but that the trial court did not abuse its discretion in permitting the statement in evidence.

Exhibit E to Return of Writ.

Petitioner contends that this Court must conduct a *de novo* review of his claim, because the state appellate court failed to address the federal constitutional issue presented.

There are three options: the deferential standard [of review] provided under § 2254(d); the *de novo* standard, and the "intermediate approach." *See Maples v. Stegall,* 340 F.3d 433, 436 (6th Cir.2003) ( *de novo* ); *Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir.2000), *cert. denied,* 532 U.S. 947, 121 S.Ct. 1415, 149 L.Ed.2d 356 (2001) (discussing alternate standards); *McKenzie v. Smith,* 326 F.3d 721, 726-27 (6th Cir.2003), *cert. denied,* 540 U.S. 1158, 124 S.Ct. 1145, 157 L.Ed.2d 1057 (2004) (same); *Howard v. Bouchard,* 405 F.3d 459, 467 (6th Cir.2005) (same). The gist of circuit precedent is that when there is a decision, deference is accorded under § 2254(d) to the state court decision under the "intermediate approach." *Maldonado v. Wilson,* 416 F.3d 470, 476 (6th Cir.2005); *Howard,* 405 F.3d at 467. When there is no decision or "no results," federal review is *de novo. See Wiggins v. Smith,* 539 U.S. at 534, 123 S.Ct. at 2542 ( *de novo* when there was no state court decision on second prong of *Strickland* test). When the state court has failed to articulate a decision or provide a rationale, the district court must distinguish between a situation of "no results" from that of "no reasoning". *Howard v. Bouchard,* 405 F.3d at 467; *McKenzie,* 326 F.3d at 727. As illustrated in *McKenzie,* the "no reasoning" situation occurs when the state court has issued a summary order, which fails to explain its reasoning, as opposed to the situation where no state court has

> "directly addressed the specific issue." In the latter situation there are
> "no results" for the federal court to defer, and *de novo* review by the
> federal court is required. See *Wiggins v. Smith,* 539 U.S. at 534, 123
> S .Ct. at 2542; *McKenzie,* 326 F.3d at 727.

*Socha v. Wilson,* 447 F.Supp.2d 809, 819 (N.D.Ohio 2007).  Thus, it appears that the intermediate

standard of review is applicable here.  Regardless, however, of which standard of review is applied,

this Court concludes that petitioner's claim is without merit.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the

right to physically confront and cross examine adverse witnesses at all stages of the trial.  *Illinois v.*

*Allen,* 397 U.S. 337, 388 (1970). This right extends to state criminal defendants through the due

process clause of the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 403 (1965). Admission

of hearsay evidence against a criminal defendant may violate his Sixth Amendment confrontations

rights because it prevents the accused from confronting an out-of-court declarant. *Ohio v. Roberts,*

448 U.S. 56, 63 (1980), *abrogated by Crawford v. Washington,* 541 U.S. 36 (2004). On March 8,

2004, the United States Supreme Court overruled *Ohio v. Roberts,* 448 U.S. 56 (1980), and redefined

the test for determining whether admission of hearsay statements violates the Confrontation Clause

. The Supreme Court held in *Crawford v. Washington,* 124 S.Ct. 1354 (2004), that testimonial

statements of a witness who does not appear at trial are inadmissible unless the witness was

unavailable to testify and the defense had a prior opportunity for cross-examination. *Id.,* at 1366:

> Where testimonial evidence is at issue ... the Sixth Amendment
> demands what the common law required: unavailability and a prior
> opportunity for cross-examination.

The Court declined to spell out a comprehensive definition of the term "testimonial," but stated that,

at a minimum, the term includes

> prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.

*Id.*  A casual remark to an acquaintance, business records, and statements made in furtherance of a conspiracy do not constitute testimonial statements subject to the strictures of the Sixth Amendment. *Id.,* at 1364, 1367.

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. –, 126 S.Ct. 2266, 2273-74 (2006); *see also United States v. Arnold*, 486 F.3d 177 (6th Cir. 2007).  A violation of the Confrontation Clause is subject to harmless error analysis. *Calvert v. Wilson,* 288 F.3d 823, 832-33 (6th Cir.2002); *Stapleton v. Wolfe,* 288 F.3d 863, 867 (6th Cir.2002).

Givens' statement does not appear to fall within the definition of a testimonial statement subject to the strictures of the Sixth Amendment.  *See Davis v. Washington, supra.*  Further, even assuming that the trial court improperly admitted Givens' testimony her sister's boyfriend shot Rispress, any error was harmless. *See Delaware v. Van Arsdall,* 475 U.S. 673, 684 (1986); *Dorchy v. Jones,* 398 F.3d 783, 791 (6th Cir.2005).

The factors to be examined in determining whether harmless error has occurred with respect to a violation of the right of confrontation include: "the importance of the witness' testimony in the

prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of the cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.* Givens knew petitioner before the shooting. She identified him as the shooter. Further, as discussed by the state appellate court, prosecution witness Kali testified as to petitioner's motive for the shooting, when Kali stated:

> some "guys" from Detroit were responsible for the death of Mike Rispress and that one of them was living with Givens.

Exhibit E to Return of Writ.

Claim five is without merit.

## VII.  CLAIM SIX

In claim six, petitioner asserts that he was denied a fair trial and the right to present a defense because the trial court refused to permit defense witness William Vance to testify regarding statements made by prosecution witness Kali showing that Kali was biased against petitioner.

*Petition,* at 12A.

The state appellate court rejected this claim as follows:

> [A]ppellant contends that the trial court improperly excluded extrinsic evidence of bias. Specifically, defense witness, William Vance, testified that he spoke with Kali sometime after the first trial and asked him why he had put appellant in such a position. The prosecutor objected on the basis that, during his testimony, Kali had never been examined, either on direct or cross, regarding any conversations of this sort with Vance. The trial court sustained the objection.
>
> Later, defense counsel asked the court to reconsider its ruling, arguing

45

that counsel was not offering the statement as a prior inconsistent statement but was offering it as evidence as bias. Vance was recalled outside the jury's presence for a proffer and testified concerning a conversation which he allegedly had with appellant after the first trial and after Kali accepted a plea agreement in exchange for his testimony against appellant. Vance testified, as follows, with regard to the conversation:

I just pretty much asked him what was going on between him and Cory, and he just got in a little rage.

He said, Fuck Cory, fuck Meca.

I don't know how much time he was actually staring at me. He said he wasn't going to do all of that time. I left him alone, okay. It looked like to me he needed some time by himself, so I left him alone.

(Tr. Vol. III, at 224.)

At trial, defense counsel advanced several arguments in an effort to have Vance's testimony included. First, counsel argued that it was permissible under Evid.R. 801 as a non-hearsay statement. However, the trial court properly ruled that the statement was not admissible because of the requirement that the declarant must first be asked about the statement. Next, counsel argued that the testimony was admissible under Evid.R. 608. However, Evid.R. 608 pertains to character evidence which must be in the form of an opinion or a reputation and must go to the issue of truthfulness or untruthfulness. Specific conduct cannot be proved by extrinsic evidence; however, it may be permitted by the trial court on cross-examination. The trial court rejected this theory as well, and this court finds that that was proper. Next, defense counsel argued that the statement was admissible under Evid.R. 404(B) as evidence of other acts. Under Evid.R. 404(B), evidence of other acts is not admissible to prove character and to show that a person acted in conformity; however, it may be admissible as proof of motive. However, the rule provides that the evidence *may* be admissible. As such, the court has discretion to allow the evidence. In the present case, Vance's proffered testimony does not necessarily show proof of any motive. In fact, as Vance testified on cross-examination, he did not know what Kali meant by this statement because he had not asked Kali a question. As such, it arguably could have demonstrated some motive; however, this court cannot find that it constitutes an abuse of discretion for the trial court to have kept this statement out. Next, defense counsel argued that the statement was

46

admissible under Evid.R. 803(3) as a hearsay exception. However, as the court found, the statement did not prove the declarant's then-existing state of mind or motive. Lastly, while citing to Evid.R. 404(B), defense counsel made the following two statements:

* * * [W]e were not offering it as a prior inconsistent statement. We are offering it as evidence of bias and motive. * * *

* * *

[DEFENSE CO-COUNSEL]: What we are trying to establish is this was an act that shows his motive to take this deal and to lie.

(Tr. Vol. III, at 221-222.)

While a majority of courts in the United States require that a witness be given an opportunity to deny or explain an utterance indicating bias, Ohio follows the minority rule and does not require that a foundation be laid as a prerequisite for the introduction of extrinsic evidence of witness bias. *See State v. Kehn* (1977), 50 Ohio St.2d 11, 361 N.E.2d 1330. However, does the statement from Vance, which defense counsel wanted to introduce, actually show the bias which appellant alleges? Appellant argues that the statement shows that Kali was prejudiced against appellant and that that prejudice was his motivation for the plea agreement. Appellant argues that the statement shows that Kali hated him and that was why Kali testified against him. However, the statement could just as easily indicate that Kali realized that both he and appellant were guilty and deserved to be punished; however, Kali realized that he had to protect his own interest and realized he could not take a chance on being convicted simply because the jury did not know who actually pulled the trigger. As Vance himself testified, he did not know what Kali meant by the statement, and neither do we. To the extent that the statement does actually show bias in the manner in which appellant indicates that it does, Vance's testimony would have been an appropriate way to have introduced that evidence. However, if the state were to request that Kali be recalled to the stand to explain the alleged statement, the trial court would have clearly been within its discretion to have permitted the state to have done so. As stated in the assignment of error dealing with manifest weight of the evidence, this court noted that the testimony of Givens alone was sufficient to have convicted appellant in the instant case. As such, any error occasioned by the trial court's refusal to permit this testimony is found to have been harmless, as it

47

would not have affected the outcome of the case.

Exhibit E to Return of Writ.  Again, the decision of the state appellate court is presumed to be correct.  28 U.S.C. §2254(d), (e).  Petitioner simply has failed to demonstrate that the state court's decision is unreasonable so as to justify federal habeas corpus relief.  *See Williams v. Taylor, supra.*

> The Sixth Amendment guarantees the criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. At the core of the Confrontation Clause is the right of every defendant to test the credibility of witnesses through cross-examination. *See Davis v. Alaska,* 415 U.S. 308, 315-16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Mayes v. Sowders,* 621 F.2d 850, 855 (6th Cir.1980). ... [C]ross-examination is more than a desirable rule of trial procedure; rather, it is the "principal means by which the believability of a witness and the truth of his testimony are tested." *Davis,* 415 U.S. at 316, 94 S.Ct. 1105; *see also Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

*Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000).  However, judges retain wide latitude to impose reasonable limits on cross examination based on concerns such as harassment, prejudice, confusion of issues, witness safety, or interrogation that is repetitive or marginally relevant.  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

> In this way, the Confrontation Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985)(emphasis in original).

*Boggs v. Collins, supra.*  Further, the "improper denial of a defendant's opportunity to impeach a witness for bias... is subject to harmless error analysis."  *Delaware v. Van Arsdall, supra*, 475 U.S. at 684.

> Whether such an error is harmless in a particular case depends upon
> a host of factors .... These factors include the importance of the
> witness' testimony in the prosecution's case, whether the testimony
> was cumulative, the presence or absence of evidence corroborating or
> contradicting the testimony of the witness on material points, the
> extent of cross-examination otherwise permitted, and, of course, the
> overall strength of the prosecution's case. Cf. *Harrington,* 395 U.S.,
> at 254, 89 S.Ct., at 1728; *Schneble v. Florida,* 405 U.S., at 432, 92
> S.Ct., at 1059.

*Id.*  For the reasons discussed by the state appellate court, this Court likewise concludes that Kali's

statement to Vance did not necessarily indicate bias.   Further, petitioner cross examined Kali on the

circumstances and reasons surrounding his plea agreement that required him to testify against

petitioner at trial.  Kali had faced nineteen years incarceration, but as a result of his plea agreement

with the prosecutor was serving only five.   *Transcript,* at 162.  Kali had entered into the plea

agreement only after hearing the victim testify against him at trial.  *Id.*, at 157.  He had prior

convictions for assault on a police officer and unauthorized use of a motor vehicle.  He had rammed

his car into the police car.  *Id.*, at 171.  Kali pleaded guilty to felonious assault with a one year firearm

specification; the remainder of the charges against him (attempted murder and having a weapon while

under disability were dismissed.)  *Id.*, at 151.  He was required to testify pursuant to the terms of his

plea agreement.  If he did not testify truthfully, his deal with the prosecutor would be "null and void"

and he would be required to face all of the charges that had been filed against him.  *Id.*, at 152.  Thus,

Kali's motive to testify against petitioner was established at trial.

Claim six is without merit.

## VIII.  CLAIM SEVEN

In claim seven, petitioner asserts that he was denied a fair trial due to prosecutorial

49

misconduct. It is the position of the respondent that this claim is procedurally defaulted due to petitioner's failure to object at trial. In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam)*; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the

petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Petitioner properly raised claim seven on direct appeal; however, the state appellate court explicitly reviewed the claim for plain error only due to petitioner's failure to object at trial:

> Appellant ... argues that the state improperly used the agreement Kali entered into with the prosecutor by stating, during closing arguments, that the fact that Kali would face 19 years in jail was strong incentive for him to tell the truth. Essentially, appellant contends that prosecutorial misconduct affected the outcome of this case.
>
> First, this court notes that defense counsel failed to object to the prosecutor's statements. As such, the error is waived except for plain error that would affect the outcome of appellant's trial. *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804. The test for prosecutorial misconduct is whether remarks were improper and, if so, whether those remarks prejudicially affected substantial rights of the accused. *State v. Smith* (1984), 14 Ohio St.3d 13, 470 N.E.2d 883. The touchstone of the analysis is the fairness of the trial and not the culpability of the prosecutor. *Smith v. Phillips* (1982), 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78.
>
> Appellant argues that, pursuant to *State v. Cornwell* (1999), 86 Ohio St.3d 560, 715 N.E.2d 1144, the prosecutor is only permitted to briefly examine a cooperating witness about a truthful testimony clause in a plea agreement. In *Cornwell*, the prosecutor had asked leading questions and bolstered the testimony of three state witnesses by asking questions about their plea bargain agreements with the state. The prosecutor asked each whether the plea agreement was made in exchange for the witness's truthful testimony. The court noted that truthful testimony clauses and plea agreements can be a "two edge sword" because, "[d]efense counsel can effectively argue to the jury that such a clause gives the witness incentive not to tell the truth but to please the prosecutor," while "[p]rosecutors ordinarily elicit information on plea agreements with witnesses during direct examination or to blunt or foreclose unfavorable cross-examination

revealing that they agreed to testify in exchange for favorable treatment by the prosecutor." Id. at 571, 715 N.E.2d 1144. The court in *Cornwell* did not view the questions as improper in part because the questions were brief, not overly emphasized, and were made at the close of the prosecutor's examination of each witness.

In the present case, the prosecutor did question Kali with regard to his plea agreement and with regard to the truthful testimony clause. This court finds that those questions posed to Kali were brief and not overly emphasized and that those comments were not improper. The question then becomes whether or not the prosecutor's statements, during closing argument, wherein the prosecutor repeated the fact of the truthful testimony clause to the jury, were improper.

Counsel is afforded a certain amount of latitude during closing arguments. In the present case, this court finds that the prosecutor did not overstep the bounds of proper conduct. Furthermore, even if the brief statements made during closing arguments were improper, this court finds that that error did not rise to the level of plain error affecting the outcome of the trial.

Exhibit E to Return of Writ.

The United States Court of Appeals for the Sixth Circuit has held that plain error review does not constitute a waiver of the state's procedural default rules. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). As explained by the United States District Court for the Northern District of Ohio in *Adams v. Bradshaw*, 484 F.Supp.2d 753, 771 (N.D. Ohio 2007):

Ohio has a contemporaneous objection rule under which an appellant who fails to object waives later review of the issue unless plain error can be shown. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir.2004), *cert. denied,* 544 U.S. 1003, 125 S.Ct. 1939, 161 L.Ed.2d 779 (2005) (citing *State v. Smith,* 89 Ohio St.3d 323, 332, 731 N.E.2d 645 (2000)). The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Id.; Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir.2001); *Stojetz v. Ishee,* 2006 WL 328155 *12 (S.D.Ohio Feb. 10, 2006).

52

A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default. *Williams,* 380 F.3d at 968; *Hinkle,* 271 F.3d at 244. The federal court, in determining whether a state court has relied on a procedural rule to bar review of an issue, examines the latest reasoned opinion of the state courts and presumes that later courts enforced the bar instead of rejecting the claim on the merits. *Hinkle,* 271 F.3d at 244 (citing *Ylst, v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

*Id.* This Court therefore likewise concludes that petitioner has waived the right to present claim seven in these habeas corpus proceedings.

Petitioner still may secure review of claim seven on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violation that he alleges.  As cause for his procedural default, petitioner asserts the ineffective assistance of counsel.   The ineffective assistance of counsel may constitute cause, so long as such claim has been presented to the state courts and is not, itself, procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446 (2000).  The record, however, reflects that petitioner has failed to establish the ineffective assistance of counsel under the test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Therefore, he cannot establish cause for his procedural default of claim seven.

The state appellate court rejected petitioner's claim of ineffective assistance of trial counsel in relevant part as follows:

[A]ppellant contends that he was denied his right to effective assistance of counsel. Appellant points to the fact that counsel failed to object to certain errors which were the subject of his third, fourth, and fifth assignments of error and to call witnesses who had given testimony favorable to the defense at the second trial. In *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court established a two-prong analysis for

53

determining whether counsel's assistance was so defective as to require a reversal of conviction:

* * * First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687.

The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. The proper standard of attorney performance is that of reasonably effective assistance. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. The defendant carries the burden of showing that counsel's deficient performance prejudiced his trial. *Id.* at 687-691. The burden is met where the reviewing court finds, given the totality of the evidence, that, but for counsel's errors, the jury's verdict would reasonably have been different. Id. at 691-696.

***

[R]elative to the prosecutor's closing arguments concerning the agreement reached between Kali and the prosecution, this court found that the prosecutor's original questions were not improper but that, arguably, it was improper to make the comment during closing argument. Counsel did not object to those comments; therefore, this could be considered under the sixth assignment of error.... [T]he only error which could arguably be recognized by this court in the ineffective assistance of counsel claim would be defense counsel's failure to object when the prosecutor mentioned the agreement between Kali and the prosecutor's office during closing argument. Standing alone, an objection to that comment would not have resulted

54

> in an outcome which would have been different and did not constitute
> ineffective assistance of counsel.
>
> ***
>
> First, whatever error there was in not objecting to the prosecutor's
> potentially improper statements during closing arguments, the error
> was harmless, and this court cannot see any effect that it had on the
> trial. ... As such, appellant's sixth assignment of error is not well-taken
> and is overruled.

Exhibit E to Return of Writ. As previously discussed, the decision of the state appellate court is

presumed to be correct. 28 U.S.C. §2254(d), (e). Petitioner has failed to establish that the state

appellate court's decision is unreasonable so as to justify federal habeas corpus relief. *See Williams*

*v. Taylor, supra*.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance

of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a

claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced the defense. This
> requires showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington, supra,* 466 U.S. at 687; *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th

Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances, the

challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland*, 466 U.S. at 697.

Petitioner complains of the following statement made by the prosecutor during closing arguments:

> Now, he also has to give truthful testimony. We talked about that. What happens if he doesn't give truthful testimony? He can go back and be retried, and he faces 19 years. That is pretty good incentive to tell the truth. Telling the truth is the right thing to do no matter what. But you can face 19 years in jail if you don't tell the truth.

*Transcript*, at CITE. Petitioner contends that the prosecutor's comments constituted improper vouching which prejudiced him, particularly since an un-redacted copy of Kali's plea agreement was submitted to the jury. *Traverse,* at 46.[1]

--------

[1] Petitioner complains that the following language of Kali's plea agreement was submitted to the jury:

> The defendant agrees and understands that his completion of the terms of this agreement is to be determined by the Franklin County Prosecutor's Office. If it is determined by the Franklin County Prosecutor's Office that at any time the defendant *** had intentionally given false, misleading or incomplete information or testimony, *** then the Franklin County Prosecutor's Office may declare this agreement NULL AND VOID.

It is improper for a prosecutor to suggest "that plea agreements imply truthfulness on the part of the government witness." *United States v. Carroll*, 26 F.3d 1380, 1388 (6th Cir. 1994).

> Such remarks are prosecutorial overkill. They inevitably give jurors the impression that the prosecutor is carefully monitoring the testimony of the cooperating witness to make sure that the latter is not stretching the facts-something the prosecutor usually is quite unable to do.... If proper objection had been made to the summation, the judge should have sustained it; if matters had gone too far to make a striking of the remarks an effective cure, the judge should have instructed that the promise in the cooperation agreement adds little to the truth-telling obligation imposed by the oath; that the prosecutor often has no way of knowing whether the witness is telling the truth or not; that the books are not filled with perjury indictments of Government witnesses who have gone beyond the facts; and that an acquittal would not mean that as a matter of course the Government would seek such an indictment or even fail to make its promised recommendation of leniency. If prosecutors know that such instructions will be given, they will hardly be tempted to the excesses committed here.

*Id.*, citing *United States v. Roberts*, 618 F.2d 530, 536 (9th Cir. 1980)(quoting Judge Friendly in *United States v. Arroyo-Arroyo*, 580 F.2d 1137, 1150 (2nd Cir. 1978).   Submission of Kali's plea agreement in its entirety, however, was not improper.

> "Introduction of the entire plea agreement permits the jury to consider fully the possible conflicting motivations underlying the witness' testimony." *United States v. Townsend*, 796 F.2d 158, 163 (6th Cir.1986). ...

> While the existence of a plea agreement may support the witness' credibility by showing his or her interest in testifying truthfully, the plea agreement may also impeach the witness' credibility by showing his or her interest in testifying as the government wishes regardless of the truth.

---

*Traverse,* at 40.

> *Id.*; *accord, United States v. Mealy*, 851 F.2d 890, 898-99 (7th Cir.1988) (holding that prosecutor may elicit testimony regarding plea agreement and may enter agreement into evidence).

*United States v. Tocco,* 200 F.3d 401, 416 (6th Cir. 2000). Further, assuming that the prosecutor's statement referred to above in closing arguments was improper, petitioner has failed to establish that the state appellate court's decision concluding that he could not establish prejudice, as that term is defined in *Strickland, supra*, was contrary to or an unreasonable application of federal law as determined by the United States Supreme Court. 28 U.S.C. §2254(d).

Petitioner likewise has failed to establish cause for his procedural default of claim seven**.**

## IX. CLAIM EIGHT

In claim eight, petitioner asserts the ineffective assistance of counsel due to his attorney's failure to object to the trial court's submission of an abbreviated set of written instructions to the jury; failure to request a cautionary instruction on the prosecutors improper statement during closing argument regarding the plea agreement's requirement that Kali testify truthfully; and failure to call Dontay Daniels as a defense witness or offer his prior testimony if he was unavailable. Petitioner also asserts the ineffective assistance of counsel due to his attorney's failure to object to the prosecutor's statement during closing argument, and failure to request redaction of the enforcement clause of Kali's plea agreement; however, because these claims are addressed, *supra*, they will not be considered here.

The state appellate court rejected these claims as follows:

> [A]ppellant brings to the court's attention counsel's errors relative to the third, fourth, and fifth assignments of error. The third assignment of error involved appellant's assertion that the jury received an

incomplete set of written instructions involving the jury's question regarding credibility and the trial court's response. This court finds no error relative to that assignment of error at all. As such, it cannot be considered under ineffective assistance of counsel argument. With regard to his fourth assignment of error, this court found that Givens' testimony would have been admissible and that no error occurred in that regard. With regard to the evidence counsel attempted to introduce relative to bias, appellant did not allege that counsel did not zealously attempt to have the testimony of Vance admitted. As such, there is no evidence of ineffective assistance of counsel in that regard either. ...

The only other error which appellant mentions relative to this assignment of error involves the failure to call Dontay Daniels, who testified during the second hearing, to testify at the third hearing. Appellant contends that Daniels' testimony from the second trial reveals that he disputed a number of Kali's claims about what he and Kali had discussed and had done that day.

After reviewing the transcript from the second trial and the third trial, this court is unable to substantiate appellant's arguments, and counsel has produced nothing, except for page numbers relative to Daniels' testimony at the second trial, to elucidate this claim. Instead, after reviewing the transcripts, this court finds that both Daniels and Kali indicated that Daniels had told Kali that Daniels believed he knew who had killed Mike Rispress. Daniels got into Kali's car, and the two of them ultimately talked about the murder. Both testified that appellant was in a car behind Kali. The only discrepancy in their testimony is that Daniels testified during the second trial that he, Kali, and appellant never drove their cars down Franklin Avenue, the street on which Givens lived. In the third trial, Kali testified that he and Daniels, with appellant following them, drove down Franklin Avenue, and Daniels pointed out Givens' apartment. In the second trial, however, Daniels did testify that he and Kali were talking about looking for the people responsible for the death of Mike Rispress.

Appellant contends that, had Daniels been called as a witness in the third trial, he would have been acquitted and that the cumulative error of counsel's failure to object to the prosecutor's statements concerning the cooperation agreement and the failure to call Daniels as a witness constitutes ineffective assistance of counsel, that he was prejudiced thereby, and that the result of his trial would have been different but for these deficiencies. This court disagrees.

59

> First, whatever error there was in not objecting to the prosecutor's potentially improper statements during closing arguments, the error was harmless, and this court cannot see any effect that it had on the trial. Second, with regard to the failure to call Daniels as a witness, this court finds that, but for that failure, the outcome of the trial would not have been different. Whether or not Daniels testified that he and Kali and appellant drove down Franklin Avenue or not, Daniels did testify, as did Kali, that they were discussing finding the people who were responsible for the death of Mike Rispress. Kali and Givens both testified that the boyfriend of Givens' sister was the person responsible for shooting Mike Rispress. As such, with or without Daniels' statement that they did not drive down Franklin Avenue, they would have been looking for the person who shot Mike Rispress, which would have included talking about and identifying where that person might be found. This is not such a significant diversion of testimony that this court can say that, but for counsel's error, the outcome of the trial would have been different. As such, appellant's sixth assignment of error is not well-taken and is overruled.

Exhibit E to Return of Writ.  Petitioner has failed to establish that the state appellate court's decision rejecting his claim of ineffective assistance of counsel is unreasonable so as to justify federal habeas corpus relief.  *See Williams v. Taylor, supra*.

For the reasons discussed, supra, and in view of substantial evidence of guilt, petitioner cannot demonstrate that he was prejudiced under *Strickland* by counsel's failure to object to the trial court's submission of an abbreviated set of written instructions to the jury and failure to request a cautionary instruction on the prosecutor's statement during closing argument regarding the plea agreement's requirement that Kali testify truthfully.   For the reasons detailed by the state appellate court, petitioner likewise has failed to establish the ineffective assistance of counsel due to his attorney's failure to call Dontay Daniels as a defense witness.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's

assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac*, 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See Michel v. Louisiana*, supra, 350 U.S., at 101, 76 S.Ct., at 164. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. *See Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*, 58 N.Y.U.L.Rev. 299, 343 (1983).

\*\*\*

[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

... [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]

*Strickland, supra*, 466 U.S. at 690.

Claim eight is without merit.

## X.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus should be **DISMISSED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the

objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

s/Mark R. Abel
United States Magistrate Judge