**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CORY A. COLVIN,** | : | |
| **Petitioner,** | : | **Case No. 2:06-cv-681** |
| **v.** | : | **Judge Holschuh** |
| **MICHAEL SHEETS,** | : | **Magistrate Judge Abel** |
| **Respondent.** | : | |
| | : | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Cory A. Colvin ("Petitioner"), a state prisoner, brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state court conviction for attempted murder and felonious assault.  On October 12, 2007 the Magistrate Judge issued a Report and Recommendation (the "Report"), recommending that this Court dismiss all eight claims in the petition.  (doc. # 15.)  This matter is before the Court on Petitioner's Objections to the Report.  (doc. # 20.)  Pursuant to 28 U.S.C. § 636(b)(1), the Court has reviewed the Report *de novo*.  For the reasons that follow, Petitioner's objections to the Report's recommended disposition of claims two through eight are **OVERRULED**, and the Report is **ADOPTED** as to its recommended disposition of claims two through eight.  However, Petitioner's objections to the Report's recommendation as to claim one, in which Petitioner alleges that his third jury trial violated the Double Jeopardy Clause, are **SUSTAINED**.  The petition for a writ of habeas corpus is **GRANTED** as to claim one, Petitioner's convictions are **VACATED**, and he is to be released from incarceration.

I.     **Background**

      A.     **Factual and Procedural History**

The Magistrate Judge accepted the factual findings of the Ohio Tenth District Court of Appeals as found in Petitioner's direct appeal, see State v. Colvin, No. 04AP-421, 2005 WL 704818 *2-4 (Ohio App. 10th Dist., Mar. 20, 2005), and set them out in full in the Report. (p. 1-4, doc. # 15.) Rather than repeat the state court's factual findings in full, the Court will only summarize them.

On October 4, 2001 Mecca Givens ("Givens") and other family members were at her sister Demetria's house mourning the recent death of Mike Rispress ("Rispress"), who was allegedly shot by Demetria's boyfriend. Also present was Kambon Tiafa Kali ("Kali"), a friend of Rispress who took his death very hard. Kali suspected that "some guys from Detroit," one of whom was supposedly living with Givens, were responsible for Rispress' death and at some point, after drinking heavily with Petitioner, Kali and Petitioner went looking in Kali's vehicle for those responsible for Rispress' death.

Meanwhile, Givens had left her sister's house and went to her own apartment with her cousin and nephew. While sitting outside her apartment with her cousin, Givens saw Kali and Petitioner drive down the street, and later that evening Kali and Petitioner returned while Givens was exiting her apartment with her nephew. Givens called out to Petitioner, and Petitioner responded by shouting back at her and opening fire with a handgun. One bullet struck Givens in her forehead above her left eye; however, Givens survived the shooting and, when police arrived, she identified Petitioner and Kali as the shooters.

Petitioner was indicted by a grand jury in Franklin County on one count of attempted murder and one count of felonious assault. Kali was also indicted and proceeded to trial with Petitioner, but in the middle of the trial Kali accepted a plea agreement and testified against Petitioner. Despite Kali's testimony, the jury could not reach a unanimous verdict and the trial court declared a mistrial.

Petitioner's second trial also resulted in a mistrial after defense counsel made an allegedly prejudicial remark during her closing arguments.  Petitioner went to trial a third time and was convicted on both the attempted murder and felonious assault charges, both of which carried firearm and drive-by shooting specifications.  Petitioner was sentenced to 14 years incarceration. Petitioner's direct appeal was denied, but the Ohio Supreme Court accepted the appeal on a sentencing issue and remanded Petitioner's case for resentencing.  After the trial court sentenced Petitioner to the same term of incarceration, Petitioner filed this petition for habeas corpus on August 9, 2006.  (Doc. # 2.)

      **B.**    **Petitioner's Habeas Claims**

In his petition, Petitioner lists the following eight grounds for granting the writ:

> 1.    Petitioner's rights under the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to the United States Constitution were violated when the trial court declared a mistrial without manifest necessity and over defense objection during his second trial and compelled him to be tried for a third time on the same charges.

> 2.    Petitioner's convictions for attempted murder and felonious assault with specifications are not supported by evidence sufficient to satisfy the requirements of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

> 3.    The submission of a materially incomplete set of written instructions to the jury and the exclusion of petitioner and his counsel from the proceedings involving the re-instruction of the jury violated petitioner's rights to due process, right to a jury trial, and right to counsel under the [F]ifth, Sixth and Fourteenth Amendments.

> 4.    The supplementation of the record on appeal with a "corrected" record that was issued by the trial court in an ex parte proceeding without adequate notice and without an opportunity to be heard violated petitioner's rights to due process and to the assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments.

> 5.    The erroneous submission of unreliable hearsay testimony directed

to establishing the State's theory of a motive for why petitioner would shoot the victim violated petitioner's rights under the Confrontation and Due Process Clauses of the Fifth, Sixth and Fourteenth Amendments.

6.    The erroneous exclusion of testimony of a defense witness regarding the cooperating co-defendant's bias and motive to lie violated petitioner's rights under the Confrontation and Due Process Clauses of the Fifth, Sixth and Fourteenth Amendments.

7.    The prosecutor's unfair efforts to bolster the credibility of the cooperating co-defendant by suggesting to the jury that the State would take corrective action against the witness pursuant to an enforcement clause of a cooperation agreement in the event that the witness did not testify truthfully violated the petitioner's right to due process and a fundamentally fair jury trial under the Fifth, Sixth, and Fourteenth Amendments.

8.    Petitioner was deprived of his right to the effective assistance of trial counsel as guaranteed to him under the Sixth and Fourteenth Amendments.

(Petition, doc. #2.)

## II.    Petitioner's Objections to the Report as to Claims Two Through Eight

The Magistrate Judge issued his Report on October 12, 2007 (doc. # 15), and Petitioner filed his Objections on December 5, 2007 (doc. # 20).  The Court has carefully reviewed the Report as to its recommended disposition of claims two through eight, and it is unnecessary to go into great detail to overrule Petitioner's Objections and adopt the Report as to claims two through eight.

Petitioner objects to the Report's conclusion that his claim of insufficiency of the evidence, claim two, be dismissed on the merits.  (Objections p. 16-21, doc. # 20.)  Petitioner again argues that the evidence was constitutionally insufficient to establish that he was the actual shooter and raises all of the same arguments that were previously presented.  In light of the facts summarized by the state appellate court, this Court likewise concludes that, when viewing the evidence in the light most

favorable to the prosecution, see Jackson v. Virginia, 443 U.S. 307 (1979), the evidence was constitutionally sufficient to sustain Petitioner's convictions, even when based on the victim's testimony alone.

Petitioner also objects to the Report's recommendation that the Court dismiss claim three, in which Petitioner argues that he was denied a fair trial, a jury trial, and counsel when the trial judge re-instructed the jury with written instructions on credibility. (Objections p. 21-26, doc. # 20.) Petitioner contends that the Magistrate Judge improperly relied on a corrected record in concluding that this claim is without merit. Petitioner's fourth claim is related to claim three, and in his Objections to the Report's disposition of his fourth claim, Petitioner argues that he was denied due process and the assistance of counsel in violation of Chessman v. Teets, 354 U.S. 156 (1957) by the state appellate court's ex parte correction or settlement of the record on the jury re-instruction issue. Petitioner's arguments are not well taken.

Chessman involved a death penalty case in which the official court reporter died prior to completing the transcript of the trial proceedings. The trial court, after holding hearings wherein the petitioner was neither present nor represented by counsel, and over the objections of the petitioner who asserted that the draft trial transcript prepared by a substitute court reporter contained inaccuracies and omissions, settled the record that was used for the petitioner's appeal. It was undisputed in Chessman that

> Fraser, the substitute reporter, was an uncle by marriage of the deputy district attorney in charge of this case . . . . In preparing the transcript, Fraser worked in close collaboration with the prosecutor, and also went over with two police officers, who testified for the State at the trial, his transcription of their testimony . . . . The testimony of one of these officers concerned petitioner's alleged confession, a subject of dispute at the trial, and petitioner's list of alleged inaccuracies . . . related to some of that testimony. It also appeared . . . that Fraser had destroyed the "rough" draft of his transcription which petitioner had sought to obtain during the settlement

proceedings.

354 U.S. at 162.  The Supreme Court held that under these circumstances, "ex parte settlement of [the] state court record violated [the] petitioner's constitutional right to procedural due process" and that the petitioner had a right to be represented at hearings resolving the record either in person or by counsel.  Id.  "All we hold is that, consistently with procedural due process . . . affirmance of petitioner's conviction upon a seriously disputed record, whose accuracy petitioner has had no voice in determining, cannot be allowed to stand."  Id. at 164.

These facts are not applicable here.  The trial court's corrected entry was not seriously disputed, and no hearings were conducted without Petitioner being represented.  As noted by the Magistrate Judge in the Report, and in the state appellate court's decision rejecting Petitioner's claims, in the state courts Petitioner never challenged the accuracy of the trial judge's corrected entry indicating that counsel was present and agreed to respond to the jury's request for the credibility instruction by providing the jury with a copy of the credibility instructions.  (Report p. 40, doc. 15.)  Further, the state appellate court's factual findings enjoy a presumption of correctness.  28 U.S.C. § 2254(e).  Petitioner has referred to no evidence indicating that the corrected entry was incorrect, nor is this Court able to locate any such evidence in the record.  Under these circumstances, and for the reasons detailed by the Magistrate Judge in the Report, this Court concludes that Petitioner's third and fourth claims fail to warrant habeas relief.

Petitioner objects to the Report's recommendation that his fifth claim, based on a Confrontation Clause argument, be dismissed on the merits.  (Objections p. 30-35, doc. # 20.)  Petitioner contends that the Magistrate Judge improperly applied the United State Supreme Court's March 8, 2004 decision in Crawford v. Washington, 541 U.S. 36 (2004), abrogating Ohio v. Roberts,

6

448 U.S. 56 (1980), because the verdict in his third trial was returned on January 26, 2004 and Crawford should not be applied retroactively to cases on collateral review. See Whorton v. Bockting, 127 S.Ct. 1173 (2007). However, Petitioner's conviction did not become final until long after Crawford was decided, and Crawford is therefore applicable in this case. See id. at 1181. Petitioner also objects to the Magistrate Judge's conclusion that any error was harmless, arguing that this case is analogous to Vasquez v. Jones, 496 F.3d 564 (6th Cir. 2007). Upon review of the record, this Court is not persuaded by Petitioner's arguments.

Petitioner similarly objects to the Report's recommendation that his sixth claim, that he was denied the right to present a defense, be dismissed on the merits. (Objections p. 35-40, doc. # 20.) The objection is based on the trial court's decision to sustain an objection to the testimony of a defense witness, William Vance, regarding a conversation he had with Kali concerning Petitioner after Kali had entered into a plea agreement. Petitioner argues that it is "inconceivable" that Kali's statement(s) to Vance did not indicate bias, (id. p. 38), and again argues that the Magistrate Judge erroneously concluded that any error was harmless. Upon review of the record, and for the reasons detailed by the Magistrate Judge in the Report, this Court does not agree.

Petitioner objects to the Report's conclusion that his seventh claim, arguing prosecutorial misconduct, be dismissed as procedurally defaulted. (Objections p. 40-47, doc. # 20.) He again argues that he has established ineffective assistance of counsel as cause for his procedural default. In conjunction with this argument, Petitioner objects to the Report's conclusion that his eighth claim, in which he claims ineffective assistance of counsel, be dismissed on the merits. (Id. at 47-49.) For the reasons detailed in the Magistrate Judge's Report, these objections are not well taken. The Court concludes that Petitioner has failed to meet the test set forth in Strickland v. Washington, 466 U.S.

7

668 (1984).

For these reasons, the Court **OVERRULES** Petitioner's objections as to claims two through eight, and **ADOPTS** the Report as to those claims.

**III.    Petitioner's Objections to the Report as to Claim One**

Petitioner objects to the Magistrate Judge's recommendation that the Court dismiss claim one.  (Objections p. 1-16, doc. # 20.)  In that claim, Petitioner argues that his "rights under the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to the United States Constitution were violated when the trial court declared a mistrial without manifest necessity and over defense objection during his second trial and compelled him to be tried for a third time on the same charges." (Report p. 9, doc. # 15.)  The Magistrate Judge recommended dismissing this claim because he concluded that, while he may not have made the same decision, the decision to declare a mistrial and the Ohio Tenth District Court of Appeals (the "appellate court") opinion affirming that decision were reasonable applications of clearly established federal law.  (Id. at 32.)

Petitioner argues that the Magistrate Judge improperly recommended dismissal of this claim because, in a pretrial conference and prior to ordering no reference to the prior hung jury, the trial judge indicated she was unsure whether such a reference would prejudice the jury, and because the prosecutor did not immediately move for a mistrial.  Additionally, Petitioner asserts that the state court's decision denying his double jeopardy claim is contrary to or an unreasonable application of federal law, see 28 U.S.C. § 2254(d), (e), Williams v. Taylor, 529 U.S. 362 (2000), because the trial judge did not take a recess to weigh her options, did not give the attorneys an adjournment to discuss a curative instruction, and prematurely declared a mistrial out of concern that there would be another hung jury, rather than out of fear of a tainted verdict.  Petitioner points out that the record contains

8

no indication that the jury would have been unable to reach a unanimous verdict if permitted to deliberate and reach a verdict. Petitioner also objects to the Magistrate Judge's recommendation of dismissal on the basis that the state appellate court, in denying his double jeopardy claim, refused to consider Johnson v. Karnes, 198 F.3d 589 (6th Cir. 1999), which is based on facts similar to those in the instant case.

### A.    Relevant Background

#### 1.    The First Trial

As noted previously, Petitioner was indicted by a grand jury in Franklin County, Ohio on one count of attempted murder and one count of felonious assault, both of which carried firearm and drive-by shooting specifications, as well as two counts of possessing a weapon while under a disability. State v. Colvin, No. 04AP-421, 2005 WL 704818, *1 (Ohio App. 10th Dist., Mar. 20, 2005). Petitioner waived a jury trial as to the two counts of possessing a weapon while under a disability, but proceeded to trial in the Franklin County Court of Common Pleas (the "trial court") on the attempted murder and felonious assault charges. Although Kali, Petitioner's co-defendant, accepted a plea bargain during the course of the trial and testified against Petitioner, the jury was unable to reach a unanimous verdict and the trial court declared a mistrial. Id.

#### 2.    The Second Trial

##### a.    The Trial Judge's Comments Prior to the Start of the Second Trial

Prior to the start of the second trial, the trial judge met with counsel to discuss the fact that witnesses would be called who had testified during the first trial. While the judge was clear that the attorneys could question witnesses about their "prior testimony under oath in a prior proceeding," the judge had doubts as to whether informing the jury that the prior jury was a hung jury would

9

prejudice the jury. The judge speculated that so informing the jury might be interpreted by members

of the jury in different ways, *i.e.* as an indication of the difficulty of the case, or, another possibility,

that they could hang or "whatever."

> [PROSECUTOR]: . . . [I]s it okay for you if we tell the jury, hey, there was a
> previous trial, or do you want us to say that there was testimony given under oath?
>
> THE COURT: Well, I don't know. I've not been faced with doing that before
> because in instances where this has occurred I've only had a couple of them and I
> think we were able to reach an agreement about one way or another how we were
> going to deal with it. And several of them just pled out the second time around. I
> don't really have an opinion about that.
>   Clearly we can say in a prior proceeding you testified under oath. I don't
> know whether you would consider - either side would consider mentioning a hung
> jury as being, you know, an indicative [sic] of how difficult the case is or maybe they
> can hang or whatever. I don't know. <u>Do you think that would prejudice the jury?</u>
> <u>I don't know.</u>

(Transcript V. I p. 5-6, Return of Writ ex. P., doc. # 6 (emphasis added).) The prosecutor expressed

his concern that if the jurors realized there had been a prior hung jury, they might realize that was

an option for them and the trial might result in another hung jury:

> [PROSECUTOR]: My concern is if they realize that one jury has hung, they will
> realize that there is, therefore, an option for them and then we'll end up in the same
> situation.
>
> THE COURT: That's what I just said. I don't know.
> . . .
>   [W]hether or not we indicate that the jury hung in the last trial is the issue that
> is the sticky one. And I'm inclined to think probably the safest way to go is that you
> testified in a prior proceeding under oath and you said X and today you're saying Y.

(<u>Id.</u> at 6-7.)

The judge's uncertainty about the various possible effects on members of the jury if they

were informed that the previous jury had not been able to reach a verdict was resolved, not by an

order from the judge but by defense counsel's agreement not to mention the hung jury. It is clear

10

that defense counsel, like the prosecutor and the judge, had no desire to have another hung jury: ". . . [W]e won't mention that the jury hung.  I don't want to interfere with this jury's ability to reach a verdict, of course."  (Id. at 7.)

### b.    The Agreement on an Instruction to the Jury Regarding the Juror's Knowledge of the Prior Trial

It is undisputed that the jury knew there had been a prior trial that did not result in a guilty verdict.  (Report p. 28, doc. # 15.)  The judge had agreed, prior to the trial, that the trial court would instruct the jury before the jury began its deliberations that it could not consider evidence of the prior proceeding for any purpose other than for assessing the credibility of witnesses.

> [PROSECUTOR]: And just to throw it out there, perhaps an instruction as they're going back to deliberate is you may have heard evidence that there was a prior proceeding.  You're not to consider that for anything other than the outside [sic] of the credibility of the witnesses.

> THE COURT: As you heard.  Yeah.  I think we may have to fashion a jury instruction that covers this in a way that does not in any way condition this jury to do anything.  And I'm perfectly willing for us to sit down and noodle that through and figure out how we can do it.

(Transcript V. I p. 8-9.)

### c.    The Inadvertent Breach of Defense Counsel's Agreement not to Mention the Hung Jury

During the closing arguments, defense counsel unintentionally breached the agreement not to mention the hung jury: "Reality is the State cannot prove this case beyond a reasonable doubt.  The State cannot prove his [sic] case beyond a reasonable doubt.  They don't have it.  It's not there.  Tried before.  They couldn't convince the jury then and they can't do it now."  (Id. V. III p. 105-6.)  The prosecuting attorney objected to the statements, and the attorneys were immediately called to the bench for a conference out of the hearing of the jury.

11

> **d.** **The Trial Judge's Reaction to Defense Counsel's Breach of the Agreement**

It is obvious from the transcript that the trial judge was angry that defense counsel had caused a problem that had not been anticipated:

THE COURT: What are you doing?

[DEFENSE COUNSEL] I apologize, Your Honor.

THE COURT: Couldn't convince them then. What the hell do you think that kind of impression is going to leave with this jury? We talked about this ahead of time that we were not going to talk about the fact that it was a hung jury the last time. What the heck do you think you've just told these people?

[DEFENSE CO-COUNSEL]: I don't think she told the jury it was a hung jury, Your Honor.

THE COURT: Couldn't reach a verdict the last time. Read it.
- - -
Thereupon, the last statement was read by the Court Reporter.
- - -
[DEFENSE CO-COUNSEL]: Didn't say the jury was hung, Judge.

[DEFENSE COUNSEL]: I apologize.

THE COURT: What the heck? How could you interpret that other than that? They couldn't convince them the last time.

[DEFENSE CO-COUNSEL]: I don't know, Your Honor.

THE COURT: Then why are we here a second time. They're going to go back and speculate that we didn't do it the last time. Well gee whiz. Jump in here.

[PROSECUTOR]: It's so incredibly prejudiced, the fairness of this case. I cannot even -

THE COURT: I can't believe this.

(<u>Id.</u> at 106-7.)

> **e.** **The Desire of the Attorneys to Not Have a Mistrial and the Judge's Precipitous Rejection of any Curative Instruction**

12

The colloquy that followed makes it clear that both the prosecuting attorney and defense counsel did not want a mistrial and did not want to face the prospect of trying the case a third time. The prosecuting attorney suggested the possibility of a curative instruction, although he was not sure as to what form it would take. The trial judge, however, at the first mention of a curative instruction, rejected that solution out of hand:

> [PROSECUTOR]: This is why I addressed this well before we did voir dire, so this would not be a part of anything because I did not want to taint this and have a third trial on this case. I'm not sure what kind of curative instruction you can give.
>
> THE COURT: Without telling what the heck happened the last time. How in the heck do I cure it by just saying oh, just don't pay any attention to that? It's already done. It's already said. In order to explain to them or to make any sense out of any curative instruction I've got to tell them what the hell happened the last time so that we can understand how this curative instruction makes any sense. I don't know about you, I can't see it.
>
> [DEFENSE CO-COUNSEL]: If I could, Your Honor, the jury already knows that there was a previous trial in this case.
>
> THE COURT: Right.
>
> [DEFENSE CO-COUNSEL]: I think instructing - providing a curative instruction to the jury that they're not to consider the outcome of any other proceedings in reaching a verdict in this case would be appropriate.
>
> THE COURT: I don't think that solves it. What do you think?
>
> [PROSECUTOR]: No. I think that that's the bare minimum. You can't tell her that she was mistaken because she's not and that would be prejudiced [sic] to the defense in putting some kind of impunity on that.
>
> THE COURT: I'm taking the jury out.

(Id. at 107-8.)

### f.    The Judge's *Sua Sponte* Declaration of a Mistrial and the Basis for that Declaration

After excusing the jury from the courtroom, the trial judge again expressed her belief that

no curative instruction was feasible and again turned to the prosecuting attorney for his opinion. The prosecuting attorney again expressed his desire to avoid a mistrial but was concerned about whether a curative instruction might reflect badly on defense counsel.  Defense counsel proposed a specific curative instruction, *i.e.* that the jury is not to be bound by the outcome of any prior proceedings.  The trial judge again called on the prosecutor for his response.  After a very brief colloquy with the attorneys, the judge *sua sponte* declared a mistrial.

> THE COURT: I don't frankly think there's any way to fix it.  What do you think?
>
> [PROSECUTOR]: Well, my desire is to try and carve out some way to fix it, but at this moment it escapes me as to how we can give an instruction that would unring the bell in a manner that would then not be prejudicial to the defense because you can't disparage [defense counsel] for making the statement or somehow imply that her statement was wrong without hurting the fairness to their side.  And I think at this point now they knew, I agree with [defense co-counsel] in saying that they were aware that there was prior testimony or at best a trial.  They can probably very logically conclude that there was a prior trial because the number of witnesses have said yeah, I testified before.
> But to say that at this point couldn't convince the jury last time, I don't think that those 12 people individually or as a group are going to be able to say well, you know, didn't reach a decision, they hung.
>
> THE COURT: We can't either.
>
> [PROSECUTOR]: Or we'll give you the option of saying we don't have to, we have an easy out because that's what happened the last time as well as being something we had said earlier we were not going to talk about and it comes up at the worst possible moment.
>
> [DEFENSE CO-COUNSEL]: Your Honor, if I could just briefly.  As we understood the Court's ruling prior to trial and we're certainly cognizant of that, the Court's ruling was we were not to instruct the jury there was a hung jury or that they were somehow bound by the decision of any previous proceedings.  The defense did not say that. [Defense counsel] did not say that in her closing remarks.  And simply put, there's not - there's no need to unring the bell.  To the extent that there might be any confusion on the part of the jury at this point, a curative instruction which is the preferred remedy as I understand it for the Court of Appeals in any situation where there's confusion to the jury, a curative instruction would be the appropriate remedy at this point.

The jury can be instructed that they are not to be bound by the outcome of any prior proceedings. That doesn't tell the jury there was a conviction, a mistrial, or an acquittal. It doesn't tell them anything about the previous proceedings. We have not told them what the jury verdict was or was not in a previous proceeding. And what they heard was what they already knew which was there was a prior trial because we've been talking about it for three days, Your Honor.

So a curative instruction, we submit, would be the appropriate remedy. We certainly did not intentionally violate any orders of this Court. [Defense counsel], I know, did not do that. And a curative instruction will cure any potential confusions the Court is concerned about, Judge.

THE COURT: Well, you know, whether it was intentional or not - I don't believe it was intentional, but it's kind of a deal if I drive my car down the street and I hit another car, whether it's an accident or I do it on purpose, the effect is we've got a bunged up car. And what we have right now is a screwed up case. What else do you want to say, [prosecutor]?

[PROSECUTOR]: I don't disagree with [defense co-counsel] in the fact that the jury can easily conclude that there was another trial. I don't think that hurts either side of the fairness of the trial. But I do not - I cannot disagree stronger that this jury can make any conclusion other than the jury hung last time. We've talked repeatedly since voir dire. The State has, the defense has. And State having to meet a burden of proof, the State having to prove everything. We had to prove all those elements.

She suggested we didn't do it last time and here we are now. I don't think there's any group of people that you can pick as 12 or somebody not going to make that conclusion. So I think that that's what I understand making that position as an argument. I think the logic of that escapes me.

[DEFENSE CO-COUNSEL]: If I could, Your Honor, the reason it's not just an argument, it's a good judgment argument. This jury know that they're the second jury on this case. We didn't add anything to the body of knowledge. It was just it's argument, it's argument that we understood and certainly [defense counsel] understood to be within the confines of this Court's order.

THE COURT: No, it isn't within the confines of the Court. Yes, we did agree that we could talk about the fact that there was a prior case. We all agreed that. No, we never got to the point of saying they couldn't do it the last time and you may have trouble, too. No. That was not a part of the original agreement. And you can argue till the cows come home, but that is not a part of the original agreement.

No one ever disputed the fact that you could talk about there being a prior case. We have talked about it ad nauseam in here that there was a prior case and they testified before and how they testified and looking at the transcripts and all that. That has nothing to do with the issue here.

<u>What the issue is here is the fact that there's the jury is aware now that the</u>

15

<u>last time they couldn't handle the evidence and couldn't come back with a verdict and by God here we are again.</u>  That's exactly the impression I have and I'm sure [the prosecutor] is going to - is on the same page.

[PROSECUTOR]: Absolutely, Your Honor.

[DEFENSE CO-COUNSEL]: Judge, with all due respect, that jury already thinks that.  They know they're the second jury in this case, Judge.

THE COURT: They don't know why.

[PROSECUTOR]: And there are -

[DEFENSE CO-COUNSEL]: Precisely.

[PROSECUTOR]: - a number of reasons why there's a second trial.

THE COURT: There could have been a mistrial the last time.  It very easily could have been a mistrial.  Could have been something that we couldn't get beyond.  It could have been a mistrial, in addition to being a hung jury.  There could be a variety of reasons why this thing didn't go.  <u>But the fact that they couldn't reach a verdict the last time, there's only one way to go with that and that is well gee whiz, we can't do it either.</u>
<u>I declare a mistrial.  I'll tell the jury.</u>

(<u>Id.</u> at 109-114 (emphasis added).)

### 3.    The Third Trial and Appeals

A third trial began, and the trial court denied Petitioner's motion to dismiss on double jeopardy grounds.  <u>State v. Colvin</u>, 2005 WL 704818 at *1.  The third jury found Petitioner guilty of attempted murder and felonious assault with firearm and drive-by shooting specifications.  The State elected to have Petitioner sentenced on the attempted murder charge, and the trial court sentenced Petitioner to a total of fourteen years incarceration.  <u>Id.</u>  Petitioner appealed, and the appellate court found that the trial court's earlier decision to declare a mistrial was "appropriate" and affirmed the denial of Petitioner's motion to dismiss.  <u>Id.</u> at 10.  The appellate court held:

In reviewing the record in the present case, this court finds that the trial judge in the

16

instant matter did not abuse her discretion in granting a mistrial.  The statement by defense counsel was improper, and it violated the prior agreement entered into between the court and counsel.  Second, the comment was prejudicial to the state.  Third, the trial judge did consider other alternatives.  The prosecuting attorney was not able to verbalize an appropriate potential instruction, and the trial judge did not agree with the statements made by defense counsel that the prejudicial effect of defense counsel's statement could be removed.  Again, as Justice Black had stated, a defendant's right to have his trial completed by a particular tribunal must in some cases be subordinated to the public's interest in fair trials designed to end in just judgments.  Upon review, this court finds that the granting of a mistrial was appropriate . . . .

Id.

Petitioner appealed to the Ohio Supreme Court, which accepted Petitioner's appeal on an unrelated issue.  The Ohio Supreme Court remanded Petitioner's case for resentencing, and the trial court resentenced Petitioner to the same sentence it had previously imposed.  Petitioner then filed this petition for a writ of habeas corpus.  (doc. # 2.)

**B.     Applicable Law**

**1.     The Antiterrorism and Effective Death Penalty Act**

The appropriate standard of review governing a federal court's analysis of a habeas corpus petition challenging a state court decision is set forth in the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA").  That statute amended 28 U.S.C. § 2254(d) to read:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

The relevant state court decision is the last state court to adjudicate the claim on the merits, and the

Court reviews the decision of "the last state court to issue a reasoned opinion on the issue;" in this case, the Ohio Tenth District Court of Appeals' decision.  Joseph v. Coyle, 469 F.3d 441, 450 (6th Cir. 2006).

Section 2254(d)(1) creates two separate clauses: a "contrary to" clause, and an "unreasonable application" clause.  Williams v. Taylor, 529 U.S. 362, 404-5 (2000).  A state court's decision would be considered "contrary to" established law if it is "diametrically different" from or "opposite in character or nature" to federal law as determined by the Supreme Court.  Id. at 405.  A "run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."  Id. at 406.

However, such a "run-of-the-mill" decision could warrant habeas relief if it involved an "unreasonable application" of federal law as determined by the Supreme Court.  If a state court decision correctly identifies the governing federal law but applies that law to the facts before it in an "objectively unreasonable" way, habeas relief would be appropriate.  "Unreasonable" does not mean "incorrect;" "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.

The state court decision must also be "contrary to" or an "unreasonable application" of "clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1).  The Williams Court stated that "[t]hat statutory phrase refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.  The Supreme Court need not have specifically addressed a particular set of facts to have clearly established federal law, however, as "[t]he Court has made

18

clear that its relevant precedents include not only bright-line rules but also the legal principles and standards flowing from precedent." Gray v. Moore, 520 F.3d 616, 621 (6th Cir. 2008); see also Panetti v. Quarterman, 551 U.S. __, __, 127 S. Ct. 2842, 2858 (2007).

      **2.**      **Double Jeopardy**

      The Double Jeopardy Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment by Benton v. Maryland, 395 U.S. 784 (1969), provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. In addition to protecting individuals from multiple punishments for the same offense, the clause also prohibits the State from twice placing an individual in jeopardy of being convicted of a particular offense. See Ball v. United States, 163 U.S. 662, 669 (1896). Jeopardy attaches when the jury is impaneled and sworn, Serfass v. United States, 420 U.S. 377 (1975), and thus "the constitutional protection also embraces the defendant's 'valued right to have his trial completed by a particular tribunal.'" Arizona v. Washington, 434 U.S. 497, 503 (1978) (quoting Wade v. Hunter, 336 U.S. 684, 689 (1949)).

      This "valued right" is not absolute, however, and terminating a trial, such as by declaring a mistrial, before resolving the charges does not automatically bar a retrial. "[A] defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." Wade, 336 U.S. at 689. Arizona v. Washington is the Supreme Court's most comprehensive and controlling discussion of when a retrial is barred by the Double Jeopardy Clause after a mistrial.

      The Washington Court clearly stated that "the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The

prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." 434 U.S. at 505. "Manifest necessity" must be evaluated in light of the circumstances, and does not lend itself to mechanical application. A mistrial need not be "absolutely" necessary; rather, courts "assume that there are degrees of necessity and . . . require a 'high degree' before concluding that a mistrial is appropriate." Id. at 506. Courts determine whether manifest necessity exists by reference to a sliding scale: in situations where the State requests a mistrial to avoid flaws in its case or to obtain a more favorable chance to convict, the "strictest scrutiny" is applied to the request, while a mistrial determination premised on a hung jury or concerns regarding the jury's impartiality "is entitled to special respect." Id. at 506-10.

Even in instances where a trial court declares a mistrial based on juror impartiality or a hung jury, however, reviewing courts have an important role to play. The Washington Court cited with approval Justice Story's statement from United States v. Perez, 22 U.S. (9 Wheat.) 579 (1824) that, when evaluating whether manifest necessity exists to declare a mistrial, courts "are to exercise a sound discretion on the subject . . . ." Id. at 580; Washington, 434 U.S. at 506 n. 18. Because any declaration of a mistrial infringes on a defendant's valued right to have his trial completed by a particular tribunal, and because an erroneous declaration of mistrial will prevent reprosecution, when deciding whether to declare a mistrial the trial court "'must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.'" Washington, 434 U.S. at 514 (quoting United States v. Jorn, 400 U.S. 470, 486 (1971)). When a trial court acts irrationally, irresponsibly, or precipitately in declaring a mistrial, even when basing that declaration on a concern regarding juror impartiality or

a hung jury, the trial court has not exercised a sound discretion on the issue.  To protect a defendant's valued right, "reviewing courts have an obligation to satisfy themselves that, in the words of Mr. Justice Story, the trial judge exercised a 'sound discretion' in declaring a mistrial."

Id.

In Harpster v. State of Ohio, 128 F.3d 322 (6th Cir. 1997) the Sixth Circuit emphasized that a declaration of a mistrial should be used with the greatest of caution:

> In summary, a long history of Supreme Court precedent has bolstered and reaffirmed the doctrine established in Perez.  Mistrials should not be declared unless "there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated."  Although trial courts should be accorded deference in making this determination, they must employ sound discretion and must consider the defendant's right to end his confrontation with the state through a verdict from the particular tribunal that he faces.  The judicial power to declare a mistrial "ought to be used with the greatest caution, under urgent circumstances, and for plain and obvious causes."

Id. at 329 (internal citations omitted).

## C.    Analysis

At the outset, it should be noted that the Magistrate Judge's statement that the decision of the state appellate court is presumed to be correct under 28 U.S.C. §§ 2254(d) and (e) (Report p. 20-21, doc. # 15) is incorrect.  The relevant portions of the statute provide:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1)   In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

The presumption in § 2254(e)(1) is not a presumption that the state appellate court's decision is presumed to be correct. It is a presumption that is limited to the state court's determination of a factual issue. As the Supreme Court noted in Miller-El v. Cockrell:

It [is] incorrect for [a court], when looking at the merits, to merge the independent requirements of §§ 2254(d)(2) and (e)(1). AEDPA does not require [a] petitioner to prove that a decision is objectively unreasonable by clear and convincing evidence. The clear and convincing evidence standard is found in § 2254(e)(1), but that subsection pertains only to state-court determinations of factual issues, rather than decisions.

537 U.S. 322, 341 (2003). There are no factual issues in the present case that were resolved by the state appellate court. The question of manifest necessity, while fact intensive, is not itself a question of fact. It is a mixed question of law and fact. See Harpster, 128 F.3d at 327.

### 1.      The Trial Court's Decision

Many cases involving the issue of whether the high degree of necessity required for declaring a mistrial exists concern a decision by a trial judge that a jury has been unable to reach a verdict, or that some inadmissible evidence or statement has clearly prejudiced either the prosecution or the defense. The present case, however, does not involve those issues. It does not involve an alleged hung jury, because the jury was never given the opportunity to consider the evidence and to arrive at a verdict of guilty or not guilty. It does not involve inadmissible evidence or a statement that was clearly prejudicial to the prosecution or the defense, because the trial judge herself, prior to the commencement of the trial, was not sure whether a reference to the prior hung jury would be prejudicial or not. As she said, with reference to mentioning the previous hung jury: "Do you think

that would prejudice the jury?  I don't know."  (Transcript V. I p. 5-6.)  Such uncertainty obviously is not a "plain and obvious cause" for a mistrial.  Perez, 22 U.S. (9 Wheat.) at 580.

The trial judge abused her discretion in precipitously declaring, *sua sponte*, a mistrial based *only* on her speculation and her fear that as a result of defense counsel's remarks, the jury in her case might be influenced to also become a hung jury.  (Transcript V. III p. 114 ("But the fact that they couldn't reach a verdict the last time, there's only one way to go and that is well gee whiz, we can't do it either.  I declare a mistrial.  I'll tell the jury").)

Comparing the trial judge's actions in this case with the conduct of the trial judge in Arizona v. Washington is instructive.  In that case, the defendant's initial murder conviction was overturned because the prosecution withheld material exculpatory evidence, and the defendant went to trial a second time.  434 U.S. at 498.  During *voir dire* and opening statements, defendant's counsel mentioned the prosecution's conduct in the first trial, and the prosecution moved for a mistrial due to the prejudicial impact of the statements.  Id. at 499.  "[E]vincing a concern for the possible double jeopardy consequences of an erroneous ruling," id. at 515, the trial court heard both parties' arguments on the subject, avoided a hasty decision by reserving ruling until the next day when the parties could more thoroughly research and explore the question, and gave defense counsel "the benefit of the doubt" even though the trial judge was inclined to believe that the statement was prejudicial.  Id. at 514 n. 34.  "In avoiding a hasty decision despite his conviction that the evidence was improper, the trial judge was plainly acting out of a concern for the double jeopardy interests implicated by an improvident mistrial."  Id.

Not so in the present case.  The trial judge based her precipitous *sua sponte* decision on her complete speculation and fear as to the possibility of having another hung jury, without considering

23

the implications of an erroneous declaration of mistrial. Rather than proceeding cautiously and showing some concern for the consequences of an erroneous declaration, the trial judge gave only cursory consideration to defense counsel's proposed curative instruction and rejected it, even in light of the fact that the prosecuting attorney explicitly stated that he wanted to find some way to cure the situation. (Transcript V. III p. 109.) The fact that the prosecutor felt that something needed to be added to defense counsel's proposed instruction, and was unable to immediately propose an acceptable curative instruction on the spot, does not justify the trial judge rejecting the possibility of a curative instruction out of hand. Williams, 434 U.S. at 514 n. 34. This is especially true in this case, where the trial judge's *sua sponte* declaration of a mistrial was based not on any concern that the erroneous statement was so prejudicial to the prosecution that it could not be cured by a curative instruction, but instead was based solely on the judge's unfounded concern that she might end up with another hung jury.

The prosecuting attorney, Petitioner's counsel, and the trial judge were all in agreement that the jury could "very logically conclude that there was a prior trial;" the jury obviously was aware that the prior jury had not found Petitioner guilty, and the jury could just as logically conclude that the prior jury had not been able to reach a guilty verdict. Whatever prejudice to the prosecution that resulted from Petitioner's counsel's statements was certainly slight under these particular circumstances and readily could have been remedied by a curative instruction of the type proposed by defense counsel.

Similarly, the transcript makes it clear that the trial judge completely failed to give any weight to Petitioner's "valued right," as the Washington Court described it, to have his trial completed by the particular tribunal convened to decide his case. Id. at 505. The trial judge did not

even mention Petitioner's rights during the entire colloquy with the attorneys.  The <u>Washington</u> Court clearly stated that "[t]he trial judge . . . 'must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.'" <u>Id.</u> at 514 (quoting <u>Jorn</u>, 400 U.S. at 486).  The trial judge focused entirely on her speculative fear that the jury might not be able to return a verdict in her case without balancing her concern against Petitioner's compelling Fifth Amendment interest, to determine if a manifest necessity existed to justify subordinating Petitioner's Fifth Amendment right to the concern of the trial judge.  Failing to give any consideration to the Petitioner's Fifth Amendment rights, when <u>Washington</u> clearly instructs judges to temper and balance their decision by considering such rights, is not a sound exercise of discretion.  In short, the trial judge acted precipitately in *sua sponte* declaring a mistrial, based on her speculation and fear that the jury might hang, without giving any weight or consideration to Petitioner's Fifth Amendment rights or the serious double jeopardy consequences of an erroneous declaration of mistrial.

**2.    The Appellate Court's Decision**

The state appellate court gave three reasons for affirming the trial court's decision.  First, "the statement by defense counsel was improper, and it violated the prior agreement entered into between the court and counsel." <u>State v. Colvin</u>, 2005 WL 704818 at *10.  The statement of defense counsel, of course, was indeed improper and violated the pretrial agreement; it also was unintentional, as the judge agreed.  While the violation produced the wrath of the trial judge, it did not itself, standing alone, produce a basis for a mistrial.

The Supreme Court has consistently refrained from applying mechanical formulas and rigid

rules in the double jeopardy context.  See, e.g., Jorn, 400 U.S. at 480 (The Court has "explicitly declined the invitation of litigants to formulate rules based on categories of circumstances which will permit or preclude retrial"); Illinois v. Somerville, 410 U.S. 458, 462 (1973) (the Perez approach "abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising in a criminal trial").  Rather, courts must take all circumstances into account when determining if manifest necessity exists for declaring a mistrial.  Washington, 434 U.S. at 506.  The Sixth Circuit has recognized this basic principle, established by the law of the Supreme Court, in Harpster v. State of Ohio, 128 F.3d at 329:

> The federal law governing manifest necessity . . . shuns categorical justifications for mistrials.  Even if counsel violates a pre-trial order, manifest necessity must be determined by looking at all the circumstances of the case.  See, e.g., Jorn, 400 U.S. at 480 . . . (noting that the "Court has, for the most part, explicitly declined the invitation of litigants to formulate rules based on categories of circumstances which will permit or preclude retrial").

The trial court's anger at defense counsel for violating the pretrial agreement obviously was not a sufficient basis for declaring a mistrial, and the fact that defense counsel unintentionally violated the agreement was not a sufficient ground for the appellate court to affirm the trial court.  The mistrial determination must be made in light of all the circumstances of the case, see Washington, 434 U.S. at 506, not based on a rote assumption that violating a pretrial agreement justifies a finding of manifest necessity to declare a mistrial.

"Second, the comment was prejudicial to the state."  Colvin, 2005 WL 704818 at *10.  The comment was made in defense counsel's closing argument and was part of an effort to convince the jury that the state's evidence against the defendant was insufficient to support a verdict of guilty.  This is an argument that is made in virtually every criminal trial and certainly cannot be considered obviously prejudicial to the state, especially in light of the trial judge's own uncertainty in the

26

pretrial conference as to whether such a comment would or would not be prejudicial to the State. (Transcript V. I p. 6.)  To the extent it could be considered prejudicial to some degree in this case, the reference to a prior hung jury arguably added some weight to counsel's contention that the state's evidence was insufficient, but this was not the concern of the prosecutor nor was it the basis for the judge's *sua sponte* declaration of a mistrial.

Although the prosecutor said the comment about the previous hung jury was prejudicial, his basic concern was not that the jury, as a result, would return a verdict of not guilty; his primary concern - and the judge's - was that the jury would decide that it, too, could hang and the case would then have to be tried a third time:

> [PROSECUTOR]: . . . I agree with [defense co-counsel] in saying that they were aware that there was prior testimony or at best a trial.  They can probably very logically conclude that there was a prior trial because the numbers of witnesses have said yeah, I testified before.
>
> But to say that at this point couldn't convince the jury last time, I don't think that those 12 people individually or as a group are going to be able to say well, you know, didn't reach a decision, they hung.
>
> THE COURT: We can't either.
>
> [PROSECUTOR]: Or we'll give you the option of saying we don't have to, we have an easy out because that's what happened the last time as well as being something we had said earlier we were not going to talk about and it comes up at the worst possible moment.
> . . .
>
> THE COURT: . . . No one ever disputed the fact that you could talk about there being a prior case.  We have talked about it ad nauseam in here that there was a prior case and they testified before and how they testified and looking at the transcripts and all that.  That has nothing to do with the issue here.
>
> What the issue is here is the fact that there's [sic] jury is aware now that the last time they couldn't handle the evidence and couldn't come back with a verdict and by God here we are again.  That's exactly the impression I have and I'm sure [the prosecutor] is going to - is on the same page.
>
> [PROSECUTOR]: Absolutely, Your Honor.

(Transcript V. III p. 109-10; 113-14.)  Furthermore, as noted earlier, to the extent there was any prejudice to the state, it could have been readily remedied by an appropriate instruction to the jury.

"Third, the trial judge did consider other alternatives."  Colvin, 2005 WL 704818 at *10. The record, however, clearly shows that 1) the trial judge was obviously outraged at defense counsel's breach of the pretrial agreement ("What the hell do you think that kind of impression is going to leave with this jury?"); 2) the trial judge, at the outset, and before hearing any suggested instructions from the attorneys, believed that a curative instruction would not be adequate:

> [PROSECUTOR]: This is why I addressed this well before we did *voir dire*, so this would not be a part of anything because I did not want to taint this and have a third trial on this case.  I'm not sure what kind of curative instruction you can give.
>
> THE COURT: Without telling what the heck happened the last time.  How in the heck do I cure it by just saying oh, just don't pay any attention to that?  It's already done.  It's already said.  In order to explain to them or to make any sense out of any curative instruction I've got to tell them what the hell happened the last time so that we can understand how this curative instruction makes any sense.  I don't know about you, I can't see it.

(Id. p. 107-8); and 3) although the attorneys for the State and for the Petitioner all expressed interest in trying to formulate a curative instruction, the trial judge declared a mistrial *sua sponte* without giving the attorneys adequate time to confer and attempt to draft an appropriate instruction that would overcome the trial judge's fear of the possibility of another hung jury.

For the reasons discussed above in section III.C.1, the trial judge's cursory consideration of other alternatives, such as a curative instruction, was insufficient to justify declaring a mistrial.  The appellate court's decision affirming the trial judge's mistrial ruling is unreasonable for the same reasons.  "[R]eviewing courts have an obligation to satisfy themselves that . . . the trial judge exercised 'sound discretion' in declaring a mistrial[,]" Washington, 434 U.S. at 514, and the appellate court did not do so in this case.  The appellate court simply credited the trial judge's *sua*

28

*sponte* and precipitous decision that no curative instruction would be adequate, without exercising

an adequate and independent review of that decision.  The appellate court did not even note that the

prosecuting attorney did not request a mistrial and desired to find a way to cure whatever prejudice

had resulted from defense counsel's statement, and the appellate court, like the trial judge, did not

give the possibility of a curative instruction any real consideration.  Similarly, like the trial judge,

the appellate court gave absolutely no consideration to Petitioner's Fifth Amendment right to have

his trial completed by a particular tribunal.  The appellate court affirmed the trial judge's precipitous

ruling that ignored the potential double jeopardy consequences of an erroneous declaration of

mistrial and failed to take Petitioner's rights into account, despite the fact that Washington makes

it clear that a trial judge and, consequently, an appellate court must consider these interests.  Id. at

514.

The appellate court had a duty to ensure that the trial judge exercised a sound discretion

when declaring a mistrial, and in this case Washington makes it clear that the trial judge did not.

The trial judge abused her discretion in precipitously declaring a mistrial under the circumstances

of this case, and the appellate court's decision affirming the trial judge is an unreasonable

application of federal law as clearly established in Washington.  Habeas relief, therefore, is

appropriate.[1]

---

[1] The decision in this case is based only on "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), as set forth in the Supreme Court decisions cited herein.  While the Sixth Circuit has held that "[w]e may not look to the decisions of our circuit, or other courts of appeals" when ruling on a habeas petition, Mitzel v. Tate, 267 F.3d 524, 531 (6th Cir. 2001), the Sixth Circuit has also said that "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."  Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007).  Other Sixth Circuit decisions hold that lower court precedent cannot be used to evaluate the reasonableness of a state court opinion, but can be used to determine if a particular legal principle is clearly

IV.     **Conclusion**

For the reasons stated above, Petitioner's objections to the Report as to its disposition of claims two through eight are **OVERRULED**, and the Court **ADOPTS** the Magistrate Judge's Report as to claims two through eight.  Petitioner's objections to the Report as to its disposition of claim one, however, are **SUSTAINED**.  The petition for a writ of habeas corpus is **GRANTED** as to claim one, Petitioner's convictions are **VACATED**, and he is to be released from incarceration within 30 days from the date of this Order.

                              **IT IS SO ORDERED**.


Date: August 25, 2008                              **/s/ John D. Holschuh**
                                                   John D. Holschuh, Judge
                                                   United States District Court

---

established or not.  See Arnett v. Jackson, 393 F.3d 681, 688 (6th Cir. 2005).

Among the decisions of the Sixth Circuit on double jeopardy issues is a case that in many respects is remarkably similar to the present case: Johnson v. Karnes, 198 F.3d 589 (6th Cir. 1999).  The state appellate court refused to apply the rationale espoused by the Sixth Circuit in Johnson v. Karnes because, "while instructive, decisions from the Sixth Circuit are not binding on this court."  Colvin, 2005 WL 704818 at *9.  The Magistrate Judge acknowledged Johnson v. Karnes but felt that critical to that decision "was the trial court's rush to declare a mistrial without seriously considering the alternatives."  (Report p. 25, doc. # 15.)

While Johnson v. Karnes appears to strongly support this Court's decision, it is not relied upon by this Court because of what the Court perceives as somewhat conflicting opinions of the Sixth Circuit on the extent to which its own decisions can be considered in habeas cases under the AEDPA.